HOLLISTER *against* THE UNION COMPANY:

IN ERROR.

A corporation was created, by the legislature of this state, for the purpose of removing the obstructions to the navigation in *Connecticut* river, from *Hartford* to the sound; it being there a public navigable river, subject to the ebbing and flowing of the tide. With an honest intention to accomplish this object, and without any design to injure any proprietor of land, the corporation erected piers and put other obstructions in the river, in a prudent and skilful manner; whereby the land of *A.,* adjoining the *Eastern* bank of the river, was gradually undermined and washed away. In an action on the case, brought by *A.,* against the corporation, for the injury which he had thus sustained, it was held, 1. that *Connecticut* river, being a public navigable river, *prima facie* and of common right, belongs to the sovereign power; 2. that the lands of individuals bounded on this river, have been granted to those individuals, or to those under whom they claim, by the state; but the state did not thereby divest itself of the right and power of improving the navigation of the river; 3. that the state, now holding the river for the purpose of navigation, may do every thing for the full enjoyment of such right, not inconsistent with the great constitutional principle that private property shall not be taken for public use, without just compensation; 4. that it is the duty of the individual proprietors of land adjoining the river, and not of the corporation, to protect the banks from encroachments by the water; 5. that remote and consequential damages to individuals, resulting from the works of the corporation, authorized by their charter, are not the taking of private property for public use, within the constitutional interdiction, but merely *damnum absque injuria;* and consequently, that the action brought was not sustainable.

THIS was an action on the case, brought by *Hollister* against *The Union Company,* for a consequential injury to the plaintiff's land. The declaration contained three counts, substantially alike, so far, at least, as any contested point in the case is concerned. In each of these counts, the plaintiff alleged, that the defendants were incorporated, by an act of the legislature of this state, passed in *October,* 1800, for the purpose of remo-

Hartford,
June, 1833.

Hollister
v.
The Union Co.

ving the obstructions to the navigation in *Connecticut* river, from *Hartford* to the sound ; that they immediately proceeded to erect wharves, piers and hedges and other obstructions in said river, which diverted the water from its original channel, *Eastwardly,* and caused it to flow against a piece of land owned by the plaintiff, lying on the *East* side of the river, whereby it was undermined, and was washed away in part, and the rest became of little value; and that these erections and obstructions were made without law or right.

On the trial of the cause in the county court, on the general issue, the plaintiff introduced evidence tending to prove, and claimed that he had proved, that with the exception of three or four years first after the defendants commenced their operations in and upon the river, the plaintiff's land had been gradually undermined and washed away, but in a greater degree within five or six years preceding the commencement of the suit ; and that the effect was occasioned by the works of the defendants upon the river. This was the only injury, which the plaintiff claimed to have been done to his land.

There was also proof, that fourteen proprietors of land in the same vicinity with that of the plaintiff, had sustained injuries to their land of a similar kind, and from the same cause.

It was not claimed, by the plaintiff, that any part of the works of the defendants was unnecessary or improper ; or that they, or any part of them, were done with a design to injure the plaintiff or any others, but with an honest intention to improve the navigation of the river. The plaintiff, however, claimed, and introduced testimony to prove, that the works might have been erected, if suitable precautions had been observed, so as not to have injured his land.

The defendants insisted, that they erected the works in a prudent, skilful manner, to effect their object, and without any design to injure any proprietor of land ; and that the injury, if any, had existed more than fifteen years before the commencement of this suit. This was denied by the plaintiff.

It was admitted, that the river, at the place where the works were erected, and several miles above, is a public navigable river, subject to the ebbing and flowing of the tide.

The defendants offered to prove, that commissioners had been duly appointed, in pursuance of an act of the General Assembly, passed in 1806 ; and that the works complained of,

*Hartford,*
*June, 1833.*

Hollister
*v.*
The Union Co.

had been erected and continued, by their advice and direction. This proof was objected to, by the plaintiff; and was rejected, by the court.

The court instructed the jury, among other things, as requested by the plaintiff, and in opposition to the claims of the defendants, that the defendants were liable, in the present form of action, for any injuries to the lands of the plaintiff, occasioned by a diversion of the current of the river from its natural course, by the erections of the defendants' works.

The jury, under this charge, found a verdict for the plaintiff. The defendants filed a bill of exceptions, embracing the case above stated, together with the charter of incorporation of the *Union Company*, and the supplemental act of 1806 : and thereupon brought a writ of error in the superior court, where the judgment of the county court was reversed. On motion in error by the plaintiff, the record was then brought before this Court, for revision.

*W. W. Ellsworth*, for the plaintiff, contended, I. That the *Union Company* were *liable* for the injury, which the plaintiff had sustained.

In the first place, a charter taking away a right of property or action, without compensation, is void, on the general principle of the social compact, and by distinct provisions of the constitution. If such is the character of this charter, it will furnish no defence to the defendants; for it is quite certain, that it contains no provision for the indemnity of the plaintiff. *Stat.* 673. ed. 1808. The general principle here advanced, is supported by the following authorities. *Gardner* v. *Newburgh*, 2 *Johns. Ch. Rep.* 166. *Calder* & ux. v. *Bull* & ux. 3 *Dal.* 386. 388. *Respublica* v. *Sparhawk*, 1 *Dal.* 357. 362. *Vanhorne's* lessee v. *Dorrance*, 2 *Dal.* 304. 310. *Cooper's Justin.* 457. *Lindsay* & al. v. *The Commissioners* &c. 2 *Bay*, 38.

Secondly, the charter is only a *licence* protecting the company from prosecution for placing stones and earth in *Connecticut* river, (a public highway) and for the exercise of their powers under the charter, they being responsible to individuals for private injuries. It is really a private association, prosecuting an enterprise for their own profit, though in its results the public have an interest, as they have, indeed, in every business enterprise. Can these defendants prosecute their plans so

as to submerge the farm of the plaintiff, without being liable ? The surface of the plaintiff's farm is carried away, and the body below now constitutes the bed of the river. The argument of the defendants, is, that they may do what they honestly think to be necessary to effect their purposes. They may not take the plaintiff's land *directly*, to construct their piers with, but they may dam up the river, and flood all the meadows above, or throw the water out of its usual channel, on to the meadows on the opposite side. This doctrine is too broad and too dangerous. Why shall not the defendants pay for a private injury ? I may put up a dam on my land, or a spout on my house, but if, by-and-by, water is thrown on to my neighbour's land, I must pay him. The defendants have a licence to act ; but they must pay as individuals pay, when they do an injury. In *Gardner* v. *Newburgh*, 2 *Johns. Ch. Rep.* 166. the court granted an injunction to prevent the diversion of water *from* one's land, because the charter contained no provision for such an injury. Here there is a diversion of water *on to* one's land. In the celebrated case of the *Albany* basin, (*Lansing* v. *Smith* & al. 8 *Cowen*, 146.) there is a provision in the charter for damages done by flowing.

Thirdly, the injury complained of is not remediless as *damnum absque injuria*, by reason of its *remoteness*. In the opposite of this proposition, the whole strength of the defendants' argument lies. In the case last referred to, the commissioners under the canal act, placed a pier in the *Hudson* river, opposite the wharf of an individual, which, in a measure, rendered its approach more difficult, whereby it was depreciated in value, and could not be rented at so high a sum. Now, as to this case, it is to be observed, that it was an act by the *commissioners of the State*, in regulating the *navigation* of a public river. The injury there belongs to the class of losses, which the law does not notice. If my neighbour sets up a rival store or public house, he injures me ; but I cannot sue him. So if the public open a new road, or shut up an old one ; or if my neighbour keeps customers from my store, by placing building materials in the highway ;—I may be injured, and yet remediless. But such is not the present case. Here the defendants have, for their own benefit, submerged the plaintiff's farm. This is not a remote injury ; it is not a depreciation of property ; but it is actually taking away the *terra firma* ; and if this may be

*Hartford,*
*June, 1833.*

Hollister
*v.*
The Union Co.

done, the plaintiff's dwelling-house may soon follow. The effect is palpable ; it is produced, as the record shews, by the *direct act* of the defendants. If it were done by individuals, on purpose, they would be liable in *trespass ;* and now because the rules of pleading require a different form of action, can this make the injury too remote to be seen with the eye of the law ? Suppose an individual on his own land, should divert the water so as to cover my lot on the opposite bank ; would this injury be too remote ? It cannot, then, become too remote, though done by public authority. The defendants must come to this ; that an individual, under a licence from the public to place piers in the river, may, if necessary, take my farm without compensation. The case read below, (*Rex* v. *Pagham*, 8 *Barn. & Cress.* 355.) is one of *self-defence* only, and does not bear upon the point under discussion.

Fourthly, the charter itself, in the supplemental act of 1806, contemplates the liability of the company " for any damages sustained by the erection or establishment of any of the works of said company in said river." *Stat.* 677. *tit.* 170. *c.* 3. *s.* 2.

2. That the plaintiff is not barred of a recovery, by the statute of limitations, or by any principle analogous to it.

In the first place, the defendants have not used the water for fifteen years, as they now do. The facts shew, that the use is new, though the pier is old. It is within a few years that the plaintiff's farm has been submerged. How the user in question has become different from what it was fifteen years since, is an immaterial enquiry. It is sufficient that the defendants are now doing what they have not done fifteen years.

But secondly, this doctrine of acquiring a title, by fifteen years use, is always founded on the idea of one's *gaining* and another's *losing ;* and the principle which runs through all the cases, is, that fifteen years user gives a right only where the party losing could have prevented his loss, either by suing or by enjoying the right himself : there must have been an *acquiescence* on his part. In *Hutchinson* v. *Ingraham*, 2 *Conn. Rep.* 590. Judge *Gould* held, that the user, to ripen into a title, must be *tortious ;* but in this particular, he differed from the other Judges. The argument of counsel in that case, was, that an exclusive or entire appropriation of a common element, with an *acquiescence* on the part of others, for fifteen years, creates a right, upon principles of policy. *Sherwood* v. *Burr*,

4 *Day,* 244. *Ingraham* v. *Hutchinson,* 2 *Conn. Rep.* 584. 590. *Cross* v. *Lewis,* 2 *Barn. & Cres.* 686. (9 *Serg. & Lowb.* 221. 223.) 3 *Kent's Com.* 356. *Cook* v. *Hull,* 3 *Pick.* 269. 271. 2 *Saund.* 175. n. *Daniel* v. *North,* 11 *East,* 372. 374, 5. *Wood* v. *Veal,* 5 *Barn. & Ald.* 454. In the present case, there was no acquiescence by the plaintiff, because until he was injured, he had no ground of complaint. The statute of limitations, absolute as it is, will never run until the injury happens. 2 *Stark. Ev.* 889. 1 *Car. & Payne,* 541.

3. That the plaintiff is not precluded from redress in this action, by reason of the *public nature* of the injury. The injury of which the plaintiff complains, is *private,* peculiar, and exclusive. That others are injured also in their private rights, is no objection to his claim. If the acts complained of, constitute a common nuisance, there is special damage.

*N. Smith* and *Hungerford,* for the defendants, contended,

1. That *Connecticut* river, being a navigable river, the title to it is in the public. *Middletown* v. *Sage,* 8 *Conn. Rep.* 221.

2. That when the adjoining lands were granted to individuals, the public did not thereby divest themselves of the power or right of improving the navigation of the river; the grant being construed most favourably for the public, and against the grantee. 3 *Kent's Com.* 348. *East-Haven* v. *Hemingway,* 7 *Conn. Rep.* 199. and authorities therein cited. *Middletown* v. *Sage,* 8 *Conn. Rep.* 221.

3. That this principle of construction being adopted, the rights of the public in regard to the river, are as extensive as if the river and its bed, having belonged to an individual, had, by that individual, been expressly granted to the public for the purposes of navigation; in which case, every thing necessary for the full enjoyment of the grant, would, by a well known rule of construction, have been conveyed.

4. That there is no provision contained in the charter of the company, by which they are made liable to protect the banks of the river from the encroachments of the stream; this being the duty of the individual proprietors to do, at their own expense, they having accepted the grants of the adjoining lands *cum onere. Henly* v. *The Mayor and Burgesses of Lyme,* 5 *Bing.* 91. (15 *Serg. & Lowb.* 376. 384.)

5. That the legislature had a constitutional right to author-

*Hartford.*
*June, 1833.*

Hollister
*v.*
The Union Co.

ize the defendants to improve the navigation of the river, without any liability for remote and consequential damages to individuals. *Lansing* v. *Smith*, 8 *Cowen* 146. Had an individual, being the owner of the river and its bed, done the acts complained of, he would not have been liable in damages to the the plaintiff. *The King* v. *Pagham*, 8 *Barn. & Cress.* 355. (15 *Serg. & Lowb.* 237.)

6. That the defendants have acquired the right of constructing piers in the river, by fifteen years' user; the principal pier having been erected for a longer period than that. *Ingraham* v. *Hutchinson*, 2 *Conn. Rep.* 584. 3 *Kent's Com.* 348. A right of action in the plaintiff against the company, was not necessary to make the user effective. But if it was, he might have removed the pier as a nuisance. The argument stands thus. The pier was put there rightfully or wrongfully. If rightfully, it is still there rightfully; and the plaintiff has no ground of complaint. If wrongfully, it was, as has been suggested, a nuisance; and he might have abated it: consequently, the user was adverse and effective.

DAGGETT, Ch. J. The act of the legislature of 1800, by which this company was incorporated, is declared, in its title, to be, "an act for incorporating a company to clear the channel of *Connecticut River.*" In the fifth section, it is enacted, among other things, that the company may "erect and build such wharves, piers and hedges in said river, or on the banks thereof, as they may judge necessary, they paying to the owner or owners of the land where such wharves may be erected, such sum or sums as may be assessed, by the county court of the county where such land may lie."

There were many points raised in the county court, which are quite unnecessary to be considered; such as, whether the county court ought to have admitted the testimony of the commissioners appointed by a supplemental act of 1806; and whether the statute of limitations could be interposed as a bar to the plaintiff's recovery. This Court is called upon now to decide, whether the defendants can be liable, in any action, for damages for a consequential injury arising to the plaintiff's land, occasioned by the prudent erection of the defendants' works, without any intention to injure him or others, but in the honest and discreet execution of their powers. I am well

satisfied, that such an action will not lie; and consequently, the judgment of the superior court must be affirmed; and hence all the other points may be laid out of the case.

The plaintiff in the county court, now defendant, endeavours to place himself on this ground; that if there cannot be a recovery in this case for the injury, then a fundamental principle of the common law, and of the constitution of this State, and of the *United States*, is subverted. The doctrine on which he relies, is this: " The property of no person shall be taken for public use, without just compensation therefor." This is, indeed, a fundamental principle of constitutional law. I feel no inclination to impugn it, or in any degree to affect it. The act in question, under which the defendants have operated from their incorporation, expressly recognises this principle. It provides, in terms, that all lands *taken* for the purpose of erecting wharves, shall be paid for, according to an assessment of the county court. But the principle now assumed, is much broader. The charge of the county court to the jury, was, that the defendants were liable for any injury to the land of the plaintiff, occasioned by the diversion of the water from its natural course, by the erection of their works. By this charge, the jury were to lay out of their consideration all acts of the defendants, designed to injure the plaintiff's land—all imprudent and improper acts, in the construction of their works,—and solely to enquire if the works caused the injury complained of. Such a doctrine cannot be sustained.

The following positions relating to this subject, may, I think, be sustained, by reason and the most approved authority.

1. *Connecticut* river, being a public navigable river, *prima facie* and of common right belongs to the sovereign power. This position has been repeatedly advanced, by this court, in several recent decisions. *East-Haven* v. *Hemingway* & al. 7 *Conn. Rep.* 186. 198, 9. *Middletown* v. *Sage* & al. 8 *Conn. Rep.* 221. *Chapman* v. *Kimball* & al. 9 *Conn. Rep.* 38. It is also the well established doctrine of the common law. *Harg. L. T.* 17. 18. 35.

2. The lands of individuals, bounded on this public navigable river, are granted to those individuals, or to those under whom they claim, by the state; but the state did not thereby divest themselves of the right and power of improving the navigation of the river; for the rule in relation to such grants

*Hartford,*
*June,* 1833.

Hollister
*v.*
The Union Co.

is, that they shall be construed most favourably for the public, for whose use the state hold, and against the grantee. 7 *Conn. Rep.* 199. 3 *Kent's Comm.* 492. (2d ed.) 5 *Rob. Adm. Rep.* 182.

3. Upon these principles, the state of *Connecticut* now hold this river, for the purposes of navigation and fishery, (unless indeed, any individual has gained title by grant or prescription to any particular use of it, which is not pretended in this case,) and therefore, upon well established principles of law, may do every thing for the full enjoyment of their rights, not inconsistent with the great constitutional principle, that private property shall not be taken for public use, without just compensation.

4. There is no duty imposed upon this company, by the charter, to protect the banks of this river from incroachments by the water. This is the duty of the individual proprietors; they having accepted their grants with this burden, and have a compensation in many ways. This idea is supported by a late decision of the *King's Bench. Henly* v. *The Mayor and Burgesses of Lyme,* 5 *Bing.* 91. (15 *Serg.* & *Lowb.* 376. 384.)

5. The public, being the owners of this river, have an unquestionable right to improve the navigation of it, without any liability for remote and consequential damages to individuals. *Lansing* v. *Smith* & al. 8 *Cowen* 146. This is a very recent decision of the supreme court of the state of *New-York.* The marginal note of the case is as follows : " The statute (of *New-York*) authorising the construction of a basin in the *Hudson* river, in the city of *Albany,* and erections whereby the docks, &c. owned by individuals alone, were rendered inaccessible or less easily approached by vessels, &c. and therefore, much depreciated in value, though it provided no compensation for such a consequence, is not unconstitutional, either as taking private property for public use, without just compensation, or impairing the obligation of contracts. This not being a direct invasion of property, but remote, and consequential merely, arising from a public improvement, the injury is one to which individuals must submit, as the price of the social compact; and in the eye of the law, the injury is ' *damnum absque injuria.*' The injury being common to a large class of the community, it is the subject of indictment only, as a common nuisance."

The case was much stronger for the plaintiff than the present. There, by the erections of the defendant in the river, the docks, &c. owned by the plaintiff were much depreciated in value. The principles and reasoning of that learned court are so very apposite to the case under consideration, that they very readily meet my assent. The court say : " If the act be unconstitutional, it must be on the ground, that the plaintiff had either at common law, as owner of the adjacent soil, or by virtue of the patent from the state, for the land under water opposite to the shore, a claim to the natural flow of the river, with which the state had no right to interfere, by any erection in the bed of the river, or in any other manner. This proposition appears to the court too extravagant to be seriously maintained. It denies to the state the power of improving the navigation of the river, by dams or any other erections, which must affect the natural flow of the stream, without the consent of the proprietors of the adjacent shore, within the remotest limits which may he affected by the operation. Every new dock which is erected, partially diverts the natural course of the stream ; and upon the principle contended for by the plaintiff, violates the rights of the proprietors of all the docks below it." *P.* 148. It would be extremely difficult to see to what extent, the doctrine of the plaintiff would not lead. It would certainly lead to this extent, that if any proprietor of land below or above these erections of the defendants, could prove any damages to his possessions, by any diversion of the water from the natural stream, by their operations, he could recover. Such a doctrine, I cannot admit.

There is also another case, quite in point. I refer to *The Governor and Company of the British Cast Plate Manufacturers* v. *Meridith* &. al. 4 *Term Rep.* 794. It was there decided, " that where the acts of commissioners appointed by a paving act, occasion a damage to an individual, without any excess of jurisdiction on their part, the commissioners, or paviors acting under them, are not liable to an action." Lord *Kenyon*, in that case, thus expresses himself: " If this action could be maintained, every turnpike act, paving act, and navigation act, would give rise to an infinity of actions. If the legislature think it necessary, as they do in many cases, they enable the commissioners to award satisfaction to the individuals who happen to suffer ; but if there be no such

*Hartford,*
*June, 1833.*

*Hollister*
*v.*
*The Union Co.*

power, the parties are without remedy, provided the commissioners do not exceed their jurisdiction." " Some individuals suffer an inconvenience under all these acts of Parliament; but the interest of individuals must give way to the accommodation of the public." These decisions and opinions are very satisfactory reasons to shew, that the plaintiff cannot recover.

Again, the doctrine of the plaintiff, in my judgment, would lead to this result; that when any person sustains any damage, however remote or consequential, by any turnpike road, improvement of the navigation of a river, any new avenue or street into a large commercial place, or any other alteration of the existing state of things, an action will lie against those who are authorised by the legislature to accomplish such object, if they act within the scope of their powers, and with entire honesty and sound discretion. Such a principle is alike opposed to common sense, common law, and adjudged cases. I cannot assent to it.

The defendants have not directly invaded the property of the plaintiff. They have not *taken* the property of the plaintiff for public use, without just compensation:—they have not, therefore, brought themselves under the constitutional interdiction; but they have, under the sanction of the authority of the legislature, to which appertained the power of regulating a public navigable river, operated upon this river so as to produce an inconvenience—a remote and consequential injury, to the plaintiff's land. For such an injury, no action can be sustained. On this ground, the constitutional objection is sufficiently avoided. But in a recent case before the supreme court of the *United States*, that tribunal has gone still further, and decided, that the provision in question is intended solely as a limitation on the exercise of power by the government of the *United States*, and is not applicable to the legislation of the states. *Barrow* v. *The Mayor and City Council of Baltimore,* 7 *Pet. U. S. Rep.* 243.

The judgment of the superior court, must, therefore, be affirmed.

BISSELL and CHURCH, Js. were of the same opinion.

PETERS, J., concurred in the result, but in coming to it proceeded solely on the ground, that a corporation is not liable for a *tort.*

WILLIAMS, J., being interested in the event of the suit, gave no opinion.