Nott, J.,
delivered the opinion of the court:
The Act to establish the territorial government of Washington, 2d March, 1853, (10 Stat. L., 172, § 1,) contained this provision :
“ Provided further, That the title to the land, not exceeding six hundred and forty acres, now occupied as missionary stations among the Indian tribes in said territory, or that , may have been so occupied as missionary stations prior to the passage of the act establishing the territorial government of Oregon, together with the improvements thereon, be, and is hereby, confirmed and established to the several religious societies to which said missionary stations respectively belong.”
And the court has found as a fact that the American Board of Commissioners for Foreign Missions had occupied as a missionary station the land which is the subject of the present controversy prior to the Act establishing the territorial government of Oregon. The point has been made by the defendants that this occupancy had been abandoned when the act of 1853 was passed by Congress; but the court, against the objection, has found that the alleged abandonment was involuntary, being rendered absolutely necessary by the imminence of great danger from a hostile force; that it was made with the intent of returning; and that the missionary in charge did in fact return with the intent of re-occupying at the earliest possible moment. The court entertains no doubt that this enforced temporary absence, accompanied by the animus revertendi and due diligence, did not disturb the legal occupancy of missionaries within the true intent of the statute.
The title thus assured to the American Board was what is known in our public-land law as a “statutory title.” At least one Attorney-General, and when speaking of this identical statute, has said “ that a grant of public land by statute is the highest and strongest form of title known to the law;” and that “it is stronger than a patent, for a patent may be annulled by the judiciary upon a proper case shown of fraud, accident, or mistake, while even Congress cannot repeal a statutory grant.” (Opinion of Attorney-General Bates, May 27, 1864.) The Supreme Court moreover has intimated .in the recent case of the Carondelet Common (11 C. Cls. R., 367) that it is now the settled law that a patent is unnecessary to perfect a statutory grant, *352 and that the title becomes perfect on the completion of the survey necessary to define it.
But at the time the claimant’s entry was made, and at the time the act of 1853 was passed, the public surveys had not been made and the Indian title was not extinguished. Analogous cases enable us to say that if the ordinary course of things had extended to this tract, if in time the public surveys had defined it and the Indian title had been extinguished, the statutory grant would have been perfected and the title of the American Board would have become complete. But here an opposite current of events has flowed, for the tract still remains unsur-veyed and the grant undefined; and by subsequent treaties with the Indians this tract in dispute has become a part of a permanent Indian reservation.
The statutory grant was in absolute terms, and it “confirmed and established” in the claimant’s grantors such title as the Government then had. As in the case of a warranty-deed any subsequent title which the Government might acquire would-inure to the benefit of the grantees. But nevertheless, at that time, as has been said, the Indian title to the property had not been divested, and since then by several treaties between them and the United States this property has been reserved by and ceded to the Indians. (Treaties 11th June, 1855, 12 Stat. L., 957, Art. II; 9th June, 1863, 14 id., 647, Art. II; 13th August, 1868, 15 id., 693, Art. I.) It is therefore a case of statute against treaty; of the former being in direct conflict with the latter; and the question is, which is to be taken as paramount law?
If this question were a new one we should approach the determination of it with reluctance and perhaps in doubt; but it has already been before the Supreme Court, and has received a unanimous and, we must believe, final determination by that tribunal. In the case of Gaines v. Nicholson, (9 How. R., 356,) one party claimed in like manner under a statutory grant, and the other under a subsequent Indian treaty. The language of the Supreme Court is unequivocal, and, as it seems to us, conclusive :
“No previous grant of Congress could be paramount, according to the rights of occupancy which this Government has always conceded to the Indian tribes within her jurisdiction. It was so much carved out of the territory ceded, and remained to the Indian occupant, as he had never parted with it. He holds, *353 strictly speaking', not under the treaty of cession, but under his original title confirmed by the Government in the act of agreeing to the reservation.”
Against the determination of this question upon the merits, the claimant has attempted to set up an estoppel by matter of record arising from a judgment recovered by him in the territorial court of Idaho, in an action in the nature of ejectment brought against the Indian agent in possession, which action was in fact defended by the United States. There are cases (cited by the claimant’s counsel) in the reports of the Supreme Court looking, to say the least, favorable to the doctrine that the Government, though it cannot be sued, yet if it voluntarily interpose and indirectly submit its title to the judgment of a court may be estopped. Certainly in many forms it has been held by the Supreme Court that when the Government brings or submits its rights to the Courts for judicial determination they must be measured and maintained by the same standard of judicial principles that would' be applied to an individual. Thus it has been held that where the Government becomes a party on negotiable paper it is bound to use the diligence which the law of negotiable paper requires; and thus, by a parity of reasoning, it may be held that where the Government seeks to obtain the advantage of keeping its agents in possession, and voluntarily comes into a court and defends a suit brought against them, setting up through the nominal defendants its own title, it will be concluded by the judgment of that court as effectually as though it had come in as plaintiff. But be this as it may, we are nevertheless of the opinion that the doctrine of estoppel cannot here be extended to the issue determinable in this action. The former action was simply for the wrongful occupation of the premises by the defendant, and judgment went by default after a demurrer to the jurisdiction had been overruled. The declaration did not show that the premises were a portion of a permanent Indian reservation, nor that the Indian title had never been divested and had been expressly reserved and confirmed by treaty. The nominal defendant did not come in and set up either the title of the United States or the title of the bfez Percé tribe. All that the judgment on demurrer or by default established was that the claimant was entitled to possession on that day. -It did not establish either as fact or law that the *354 Indian title had become extinct, nor were the Indians directly or impliedly before the court to be estopped by its judgment.
In this case the defendants are sued for use and occupation, and they show that they'do not hold in their own right, but under the Indian title, and as trustees or guardians of the Indians by virtue of that peculiar relation which subsists between the Government and the Indian tribes. They could only be held liable for the rent of these premises in virtue of some privity of contract between themselves and the claimant, or in consequence of some obligation assumed for the Indians and ratified by treaty. As to the former, all presumptions in its favor would be negatived by the judgment in ejectment, certainly up to that time; as'to the latter, no such obligation was established by the judgment, and if it had been this court would be without jurisdiction to enforce it. (Rev. Stat., § 1066.)
It should also be noted that the claimant’s right of action, whatever it may be worth, can hardly be maintained in its present form. This action has been brought under the decision of this court in Johnson's Case. (4 C. Cls. R., 248.) There the court found that the claimant’s property had been taken for temporary use, and accordingly fixed the compensation in the form of an annual rent. In this case the property, if taken from the claimant, was taken by virtue of the treaties ceding it back to the Nez Percé tribe. It is settled that private property cau be taken for public use by the terms of a treaty. (Meade's Case, 2 C. Cls. R., 224.) That a treaty with an Indian tribe is as supreme law as a treaty with a foreign power is clearly shown, if it could be doubted, by the cases cited by the defendants’ counsel. The taking and present holding of this property, under and by virtue of a treaty of cession, must be deemed a taking in perpetuity or of the fee. That taking would exclude the relation of landlord and tenant within the decision of the Supreme Court in Carpenter's Case. (9 C. Cls. R., 18.)
A number of other points have been raised by the defendants’ counsel, but the court confines its decision to the claimant’s title. That title having failed the action must fail.
The judgment of the court is that the petition be dismissed.
Peck, J., was not present when the case was heard, and took no part in the decision.