Weldon, J.,
delivered the opinion of the court:
The ordinary jurisdiction of the court does not embrace as a cause of action the facts set forth in the findiugs ; but Congress, on the 2d of March, 1889, in order to enlarge the scope of our judicial authority, passed the following act :
“AN ACT referring the claim of the owners of the steamer I. N. Bunton to the Court of Claims.
uBe it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the claim of the legal owner or owners of the steamer I. N. Bunton, her cargo, freight, tow, and personal effects, alleged to have been sunk by collision with the pier of the Davis Island dam, in the Ohio River, on or about the second day of January, eighteen hundred and eighty-four, lie referred to the Court of Claims, to hear and determine the same to judgment, with the right of appeal as in other cases: Provided, That no suit shall 'be brought under the provisions of this act after six months from the date of the passage thereof.
“Approved, March 2,1889.”
The facts, as shown by the record, are briefly as follows: In the year 1884 the United States were engaged in constructing a dam and locks in the Ohio River, some five miles below the city of Pittsburgh, at Davis Island; and in the construction of the. same, a pier was built at the north end of the dam, which rose some four feet above the water. Between that pier and lock wall the channel of the river flowed. The orders of the Government officers in charge of the work were, that a light should be placed every night on the pier, as well as on the east *375 end of the lock-wall. This was done until tbe night of the 1st of January, 1884, when, by the carelessness of the person in charge, it was omitted. There had been a change of the persons in charge on the 31st of December, and owing to that fact the light was omitted for two consecutive nights. Such lights were necessary for the safety of navigation on the river at that point. On the night of the 1st of January, the steamer I. N. Buntou, belonging to claimants, started from the city of Pittsburgh, at about 10 o’clock, with a licensed pilot, complement of officers, and a double crew of boatmen. The night was dai k and somewhat foggy; the water was high, with a considerable flow of ice. The steamer had in tow three coal barges, loaded with coal, the property of claimants.
Soon after midnight, approaching’ the works at Davis Island, a sharp lookout was kept for lights, which were supposed to be there, as they had been before. When within about 200 feet of the east end of the lock wall, as was supposed, the lights on 'that wall were first seen. But owing to the darkness and fogginess of the night, it was not possible for the officers of the boat to determine the real distance of the wall.
They kept the boat to the south to avoid the lock wall, and not seeing nor knowing where the north pier was situated, by reason of there being no light upon it, the boat struck the piling just above that pier, swung to the left, and collided with the pier next south, crushing a hole in her hull and causing a total wreck of the steamer, which caught fire and burned to the water, and sunk. Two of the coal boats, with their cargoes, were lost, and the third coal boat drifted down the river and sunk, but was subsequently raised and saved.
The loss was not caused by any fault, negligence, or want of skill on the part of the claimants, their officers, or employés, but was attributable to the gross negligence of the officers or employés of the defendants, in omitting to place a light on the north pier of the dam at Davis Island.
■ The following are the losses incident to the collision :
Value of the steamer I. N. Bunton. $26,000'
Value of 50,000 bushels of coal, at 9 cents, and two coal boats lost.. 4,500
Expenses of raising the third coal boat. 1,110
Detention of steamer Coal City, belonging to the claimants. 300
Lighting and clothes for men who lost their clothes by the accident 200
Funeral expenses of the men lost. 75
Total.. 32,185
*376 Upon these facts, as applicable to the statute giving the court jurisdiction, have the claimants the right to recover ? In the absence of the special law, this court would have no jurisdiction, as the facts clearly develop a case of negligence on the part of the agents of the Government, for which an ordinary corporation or individual would be, at common law, liable to an action ex delicto. Section 1059, Eevised Statutes, defining the jurisdiction of this court, provides in the first clause of said section:
u First. All claims founded on any law of Congress, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, and all claims which may be referred to it by either house of Congress.”
JDhis clause of the statute defines the general jurisdiction of the court, and excludes by omission all claims founded upon the torts of the agents or officers of the Government. The right of the claimants to a recovery in this proceeding depends . upon the construction of the special statute — as to whether Congress intended to apply to the United States, as defendants, the same law of liability that attaches to ordinary corporations or individuals. If the Government is subjected to that law, the claimants are clearly entitled to recover, as the . findings show that the loss of the property is “ attributable to the gross negligence of the officers and employés of the defendants.” The statute provides that the Court of Claims “ shall hear and determine the same to judgment, with the right of appeal, as in other cases.”
In the absence of express statutory provisions, it is well settled that the United States are not liable for the torts of its officers and agents, within the jurisdiction of the judicial department of the Government. It is for Congress to deal with such questions of responsibility, the policy of the Government not having intrusted matters of that character by general law to the determination of its courts. Upon that question Judge' Cooley, in his work on the subject of torts, says:
“ Even the State or General Government may be guilty of individual wrongs, for while each is a sovereign it is a corporation also, and as such is capable of doing wrongful acts. The difficulty here is with the remedy, not with the right. No sovereignty is subject to suits, except with its own consent. But either this consent is given by general law, or some tribunal *377 is established with power to hear all just claims; or, if neither of these is. done, the tort remains, and it is always to be presumed tha.t the legislative authority will make the proper provision for redress when its attention is directed to the injury.” (Cooley on Torts, 122.)
In this view of the law, it is safe to assume that the act giving this court jurisdiction was passed, so that within the jurisdiction conferred by the statute the defendants became subject to the same responsibility that would attach to corporations or individuals amenable to common-law liabilities.
This court has had recent occasion to construe and apply statutes of like character, and have held that such laws have the effect to hold the United States responsible for the acts of its agents and officers who act negligently or tortiously with the rights of the citizen.- (Jane Carroll et al. v. The District of Columbia, 22 C. Cls. R., 104; Joseph Irwin & Co. v. United States, 23 C. Cls. R., 154.) The terms of the statute giving the right to the court to hear and determine the same to judgment, in the absence of restrictive clauses, and the direct submission of the question of liability, must be held as subjecting the defendants to a liability because of the negligence of their officers.
This claim was originally presented by petition and bill to Congress, and was by order of the Committee on Claims of the House of Representatives referred to this court under the act of Congress approved March 3, 1883, and reported by this court, in accordance with the provisions of said act, on the 8th day of February, 1885. Upon the basis of that report the claimants further petitioned Congress, when the act of the 2d of March, 1889, was passed, conferring jurisdiction on this court to try and determine the case to judgment. From the findings presented upon the reference under the Bowman Act Congress was fully advised as to the character of the claim, and legislated upon the basis of that kmowledge.
In the very able report of Mr. Lanham, from the Committee on Claims, accompanying the bill which was enacted as the ' law in this case, it is said:
“Whether the Government is liable generally for torts is a question which may well be laid out of discussion in the present case. The principle on which liability in cases of marine collision is sustained is simply that of the responsibility of a property owner for the management and use of his property— *378 simply a practical application of the sound maxim, Sic títere tuo ut alienum non Icedas. We might well adopt, with reference to the General Government, the language of the Supreme Court of the United States in a recent case:
“ ‘ The great principle of the common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred.’ (Baltimore and Potomae Bail-road Company v. Fifth Baptist Church, 108 U. S. R., 331.)
“ The same principle applied in the present case would seem to lead to a conclusion favorable to the claim.
“ The findings of the Court of Claims are annexed to this report and made a part hereof.
“ While the equities in the case of these claimants appear to be very strong, and appeal to your committee with much force, your committee, nevertheless, believe that it would be more in accordance with the precedents established in other cases of perhaps equal justice (see the acts above cited from, 16th Stats., p. 705; 18th Stats., p. 201; 19th Stats., p. 503, and 20th Stats., p. 483) to refer this case absolutely to the Court of Claims on the facts and the law than to pass an act for its payment. On such a reference that court can, if it sees proper, re-examine the facts, and upon the fads as finally found apply the law in the same manner as if the suit were in a court of ordinary admiralty jurisdiction.
“Your committee therefore report the accompanying bill, H. R.-, entitled ‘A bill referring the claim of the owners of the steamer I. N, Bunton to the Court of Claims,’ and recommend that the same do pass.”
During the pendency of the bill in the House of Representatives the following amendment was offered and rejected by the action of the House:
“ And provided further, That the Court of Claims is hereby empowered to decide all questions of law and fact that may be presented by, or arise upon, any petition that may be filed in this case, and decide whether the facts presented by such petition do in themselves constitute a legal claim or demand against the Government; and the legal liability of the Government is hereby expressly reserved by this act.” (Congressional Record, Fiftieth Congress, first session, part I, p. 465.)
These extracts from the proceedings of Congress are cited as indicating the purpose of the legislature in the passage of the law in question.
In the Senate a very able report was submitted by Senator Hoar, recommending the passage of an act to compensate the claimants for the loss sustained by them in the destruction of *379 their property. From that report we make the following extract:
“ The committee think that the Government of the United States is not liable for loss or damage occasioned to private citizens by reason of any imperfection in the performance of the ordinary functions of Government, or by reason of the acts, omissions, or negligence of its officers or agents in the discharge of such functions. This principle we suppose to be applicable not only to the General Government, but to the governments of the States and to municipal and other similar corporations to whom certain public functions are assigned, even though such corporations may be made parties, defendant or plaintiff, to suits in law or equity. In some cases such corporations are stimulated to due care in the exercise of public duties imposed upon them by rendering them liable for damage occasioned by their negligence. ■ But this liability is created only by express •statute. Such has been the well-settled rule in regard to actions against towns and cities for defects in highways or injuries. suffered by individuals for want of repair of public buildings erected or maintained by the municipality for municipal purposes only.
“ We are not in favor of extending the liability of the United States to such cases. But we are of opinion that there are two classes of cases where sound public policy requires the United States and all other sovereign governments to hold themselves responsible for injuries occasioned by the negligence of their agents. One is where the Government, through its agents, manages or controls property from which it receives a benefit or profit, in the same way as private owners receive such benefit or profit, as by receiving rents or other advantage for what might be termed its private emolument, although the profits so received are ultimately thereafter disposed of for public purposes. This obligation is recognized by the courts in many of the States, and by the House of Lords in England. Many of the leading cases on this subject are collected in Oliver v. Worcester, decided by the supreme court of Massachusetts in 1869 and reported in 102 Mass., 489.
“ Another class of cases where this responsibility is recognized is where the Government is using or managing property through its agents under circumstances where these agents mingle on terms of equality with the general mass of citizens, and where the security of the citizens requires that the same obligation shall rest upon them and that it shall be enforced by similar responsibility as in the case of private persons. Congress has always recognized the obligation of the Government for injuries occasioned by the fault of the officers of its naval and other vessels in maritime collisions. We have no doubt that an injury occasioned to a private person by the carelessness of the driver of a mail-wagon or other vehicle passing *380 through the streets and engaged in business of the Government ought in like manner to be the subject of responsibility. We think that a similar rule ought to be applied to the case of the private citizen who is injured by the negligence of the agents of the Government in the erection or construction of works built under Government authority upon or adjacent to public highways, whether these highways be navigable streams or the ordinary ways on land.”
This extract from the very able report of Senator Hoar not only indicates the proper construction of the statute, but it clearly marks the line where the responsibility of the Government should be drawn in cases where the private rights of the citizen have been violated by the negligence of public authority.
The findings show that the steamer at the time of loss was worth the sum of $26,000; value of coal, $4,500; expenses of raising one of the barges, $1,110; and for those amounts we think the claimants have the right to recover. The other losses indicated are not the necessary and legitimate result of the injury, and for those no recovery can be had in this proceeding.
It is the judgment of the court that the claimant recover the the sum of $31,610.