Weldon, J.,
delivered the opinion of the court:
In this proceeding it is sought to recover damages because of the construction of a dike by the defendants in the Ohio Biver, at a point off Nevelle Island, about nine miles west of the city of Pittsburg.
Congress, by the River and Harbor Acts of July 5,1884 (23 Stat. L., 133, 147) and Augtist 5, 1886 (24 Stat. L., 310 327), authorized an improvement in the Ohio Biver, by the appropriation of nine hundred and seventy-five thousand dollars. In the expenditure of a part of that money the agents of the defendants, in June, 1885, commenced the construction of a dike, 2,200 feet in length, to increase the flow of water in the channel opposite to said island. It began at a point 400 feet east of the land of plaintiff, and ran in a northwesterly direction to the outer point of a bar contiguous to the land of the plaintiff. In the construction of it no contact was made with the plaintiff’s property either by the location of the dike or in the, prosecution of the work.
It is not alleged, nor is it established by the evidence, that the defendants were guilty of negligence or unskillfulness in the mode of construction; but that, in mere consequence of the location and erection of the improvement, the property and possession of plaintiff have been impaired and damaged.
The facts show, that the plain tiff was the owner of a tract of land on said island, which at the time of the construction was, as it had been for many years hitfierto, used as a market garden; that in front of the land was a convenient wharf, where boats landed, and from which the products of the land were shipped to the city of Pittsburg; that in consequence of the construction of the dike the free ingress and egress to and from the land from the channel of the river were materially impaired, and that, except in a high stage of water, it is incon *24 venient and almost impracticable to use said wharf as a shipping point; that since the improvement the plaintiff has been compelled to use a landing upon other land than her own; and that, in consequence of the inconvenience arising from her inability to use the landing on her own land,, the property and possession have been materially damaged. . The facts do not show that any physical invasion was made upon the land, or that the dike was improperly constructed in attaining the object and purpose of the improvement. The point of the construction where it touches the island on the north side is about 400 feet from the line of the east boundary of plaintiff’s property.
The theory of the case, is that the United States have appropriated the riparian rights of the plaintiff and in consequence of that appropriation private property has been taken for the public good, from which originates. an implied obligation to pay the value to the owner.
The statute defining the jurisdiction of this court, as to the subject-matter of the claim is as follows: “All claims founded upon the Constitution of. the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract, express or implied, with the. Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the parties would be entitled to recover against theUnited States, either in a courtof law or equity or admiralty, if the United States were suable.”
Two questions arise in the discussion and decision of the issues of this case. First, whether the court has jurisdiction under the law defining its jurisdiction; and, second, whether upon the facts the plaintiff has a right to recover. The damages complained of, while they are not remote in the sense of the law, are purely consequential, and grow out of an act upon the part of the defendants which by the common law would be a tort. The demand is for unliquidated damages, and if the action “sounds in tort” there is no jurisdiction in the court to determine questions affecting the merits of the controversy. The term “sounding in tort;” while well known to the language of the law, is without exact and technical definition in adjudged cases.
Actions ex contractu and actions ex delicto are the well-recognized divisions of the law of pleading, and. all* common-law *25 proceedings fall witbin the clearly defined boundaries of those two forms. If the JJnited States were suable as individuals, under the common-law practice, the grievance of which the claimant complains would fall within the classification of an action ex delicto, unless the law will infer and imply a contract from the circumstances of the transaction.
The agents of the defendants in charge of the work evidently proceeded in good faith, in the belief that the United States had a legal right to construct the dike as it is constructed, for the purpose of-the improvement of the river; and in such construction they did not intend to appropriate or condemn any right of property which the plaintiff might have in the useand enjoyment of the landing. Building the dike, as they did, from land not belonging to plaintiff, they asserted and claimed as a right of the United States the power to so construct the improvement, without any responsibility or liability to the plaintiff. They did not recognize or acknowledge the right of pri-' vate property, as alleged in the petition and claim of plaintiff. They proceeded under the general legal right to'improve the navigable streams, and not under that power of the Constitution which gives to the Government the right to take and appropriate private property for public use upon making compensation to the owner. It was not the exercise of eminent domain in the contemplation and purpose of the defendants.
Affecting the question and character of the taking, this court in substance has decided that no implied contract can arise when and where the United States are claiming title and right in the property as against the plaintiff. The fact that the Government denies the title of the party and bases its action upon a right of its own, repels the presumption upon which an implied contractis founded. Therecanbenocontract unless the parties, either by expression or implication, agree; and where the United States deny the title of plaintiff in a taking, the law will not imply, as against the claim of the Government, an agreement to pay. Contracts are made by the agreements and implications arising from acts of parties, and not from their denials and differences. (Dennis, 2 C. Cls. R., 210; Gibbons, 7 C. Cls, R., 106; Gill, 25 C. Cls. R., 415; Schellinger et al., 24 C. Cls. R., 278; Fawcett, 25 C. Cls. R., 178; Lanman, 27 C. Cls. R., 260; Langford, 12 C. Cls. R., 338; Langford, 101 U. S., 341; Jackson, 27 C. Cls. R., 74; Walton, 24 C. Cls. R., 372.)
*26 In the Langford case it bas been in substance beld:
“That court bas jurisdiction only in cásese® contractu, and an implied contract to pay does not arise where tbe officer of tbe Government, asserting its ownership, commits a tort by taking forcible possession of tbe lands of an individual for public use.
“Tlie provision restricting that jurisdiction to contracts express or implied refers to tbe well-understood distinction between matters ex contractu, and those ex delicto, and is founded on tbe principle that while Congress is willing to subject tbe Government to suits on contracts, which can be valid only when made by some one thereunto vested with authority, or when under such authority something is by him done which raises an implied contract, that body did not intend to make the Government liable to suit for the wrongful and unauthorized acts which are committed by its officers under a mistaken zeal for the public good.
“If, under claim that they belong to the Government, an officer seizes, for the use of an Indian agency, buildings owned by a private citizen, no implied obligation of the United States to pay for the use and occupation of them is thereby raised.” (101 U. S., 341.)
The restriction of the jurisdiction of the court'to contracts, express or implied, has, in the judgment of the Supreme Court, recognized the well-understood distinction between matters ex contractu and those ex delicto, and has excluded from the consideration of the court cases which are founded upon wrongs and such as can be adjudicated only in the form of an action ex delicto.
The statute under which the Langford case was decided is ■substantially the same as the present statute: “All claims founded upon the Constitution” does not enlarge the jurisdiction of the court beyond the boundaries of the old law so as to include the right to sue the United States for damages growing out of the wrong of its officers, and which, by all the analogies' and distinctions of the law, sound in tort.
It is not necessary to cite authorities to prove that, by the common law, the plaintiff would have to sue in case, an action provided to supply the deficiencies of the ancient forms of action, and which from its commencement and still is recognized as belonging to actions ex delicto. Angelí on Water Courses, in discussing the forms of action applicable to the redress of grievances connected with water courses, says:
*27 “ Tbe general result of English authorities renders it very-clear that where the damage doe's not immediately result from the act complained of it is consequential, and case is the proper remedy; and, on the contrary, where the act.itself and not the consequence of it occasions mischief, trespass is the right action.”
In the case of Gibbons {supra) the Supreme Court has held:
“ Under the guise of an implied contract the Government can not be made liable for the unauthorized acts of its officers, they being in the nature of torts, even though it derive a benefit thereby.
“Wrongs done to individuals by officers of the Government, though they may have been committed while serving that Government and in tbe belief that they were for its interest, can not be righted by the decisions of the United States courts. Congress has wisely reserved such matters for their own determination.”'
Since the argument of this cause our attention has been cited to the case of Hill v. The United States (149 U. S., 593), in which the doctrine of the foregoing cases is affirmed with all possible precision. The syllabus and opinion are as follows:
“A claim by a person asserting title in land under tide water, for damages for the use and occupation thereof by the United States for the erection and maintenance of a lighthouse, without his consent and without compensation to him, but not showing that the United States have acknoxvledged any right of property in him as against them, is a case sounding in tort, of xvhich the Circuit Court of the United States has no jurisdiction under the act of March 3,1887, ch. 359.
“The whole effect of the act of March 3,1887, c. 359, under which this suit was brought, was to give the Circuit and District Courts of the United States jurisdiction, concurrently with the Court of Claims, of suits to recover damages against the United States in cases no sounding in tort. (United States v. Jones, 131 U. S., 1, 16, 18.
“The United States can not be sued in their own courts without their consent, and have never permitted themselves to be sued in any court for torts committed in their name by their officers. Nor can the settled distinction, in this respect, between contract and tort be evaded by framing the claim as upon an implied contract. (Gibbons v. United States, 8 Wall., 269, 274; Langford v. United States, 101 U. S., 341, 346; United States v. Jones, above cited.
“An action in the nature of assumpsit for the use and occupation of real' estate will never lie xvhere there has been no relation of contract between the parties, and xxdiere the possession has been acquired and maintained under a different or *28 adverse title, or where it is tortious and makes the defendant a trespasser. (Lloyd v. Hough, 1 How., 153, 159; Carpenter v. United States, 17 Wall., 489, 493.)
“ It has since been held that if the United States appropriate to a public use land which they admit to be private property, they may be held, as upon an implied contract, to pay its value to its owner. United States v. Great Falls Mnf. Co., 112 U. S., 645, and 124 U. S., 581.”
But conceding the jurisdiction of the court, upon which some members of the court are not clear, has the plaintiff a right to recover for the injury alleged?
Thatshe has suffered intheuse and occupation of her property in consequence of the construction of the work is established by the facts; but it does not follow that the defendants are responsible to her for the consequences. It is not every injury that gives a right of action. The doctrine of damnum absque injuria embraces a multitude of cases where the most serious inconvenience and damage arise without a corresponding-right to recover satisfaction in a judicial tribunal. The owner of property within the proper exercise of dominion may do many acts resulting- in damage to others, and no action will lie for such acts.
The right of the Government to improve the navigable rivers of the United States is beyond question. Millions of dollars are spent every year for that purpose; and, since the celebrated case of Gibbons v. Ogden (8 Wheat, p. 1), the absolute jurisdiction of the Únited States over the navigable streams of the country has been unquestioned. In that case it is said:
“The acts of the legislature of the State of New York, granting to Bcbert E. Livingston and Robert Fulton the exclusive navigation of all the waters within the jurisdiction of that State with boats moved by fire or steam for a term of years, are repugnant to that clause of the Constitution of the United States which authorizes Congress to regulate commerce, so far as the said acts prohibit vessels, licensed according- to the laws of the United States for carrying on coasting trade from navigating- the said waters by means of fire or steam.”
The theory upon which the plaintiff must recover, if at all, is that her property was taken by the defendants and no compensation has been made. If that is true, in the absence of any claim on the part of the United States, and if, in the exercise of the right of eminent domain by them, the law implies *29 an agreement upon tbe part of the defendants to pay for the value of the property taken, and the suit can be maintainted. Of what property was the plaintiff possessed in the alleged right to have a sufficient stage of water and an easy apjiroach to the wharf on her lands? The Supreme Court of the State of Pennsylvania has decided:
“The absolute ownership of land adjoining a navigable stream extends only to.the high-water mark; below that the ownership of the soil will not authorize such use of it as will interfere with the use of the stream as a highway or cause it to encroach upon the other riparian owners.” (Baily v. Mil-tenberger, 31 Pa. St., 37.)
“ Between high and low-water mark the owner of the soil may use the river for his private purpose, if he do not interfere with the rights of the public.” (Zug v. Commonwealth, 70 Pa. St., 138.)
Before the construction of the dike the plaintiff had adjacent to her land a flow of water of sufficient depth to enable her to approach the margin of her possession without being compelled to adopt a circuitous route in that approach; but by the construction the flow of water is lessened, and the approach, instead of a direct line, is circuitous between the end of the dike and Merrimans Bar. Can it be said that she had a property in the flow of water, or in the approach to her land, which would supervene the right of the public to improve . the channel of the river for the purpose of facilitating navigation in the interest of commerce? If she had any such right, it must be based upon prescription, which presupposes a grant.
In order to recognize a title by prescription the court must assume that at some time a gr'ant was made of the alleged right of the plaintiff. The easement or privilege which the claimant enjoyed before the improvement is one incident to every riparian owner along the banks of the rivers of the United States; and for the court to assume that such privilege or easement is founded upon a grant would make the defend-auts responsible for every damage or inconvenience which might arise from every improvement in any and all the rivers of the country. The most that can be said in favor of the contention of plaintiff is, that permission ,was given to use the water of the river so long as such use was consistent with the interest of the United States.
*30 The right was not founded upon a grant in the legal sense of that term, from which a permanent right of property might arise, but upon a mere license, which can be revoked at any time, and which was revoked when the defendants exercised a power inconsistent with the license.
But conceding the right of property in the thing affected, Aras there such a taking within the meaning of the Constitution of the United States as will support an implied contract upon the part of the defendants to pay?
Upon this branch of the case, as it has been said, “the extremest qualification of the doctrine is to be found perhaps in Pumpelly v. Green Bay Co. (13 Wall., 166), and in Eaton v. Boston, etc., R. R. Co. (51 N. H., 604).”
In the case of Pumpelly the defendant backed the AAmter so that it overflowed the premises of the plaintiff, and because of such overflow the Supreme Court held there was a taking within the meaning of the Constitution.
“ The backing of Avater so as to overfloAV the lands of an individual, or any other superinduced addition of water, earth, sand, or other material or artificial structure placed on land, if done under statutes authorizing it for the public benefit, is such a taking as by the constitutional provision demands compensation.
“ The cases which hold that remote and consequential injury to private property by reason of authorized public improvements is not taking such property for public use have many of them gone to the utmost limit of that principle and some beyond it, though the principle is a sound one in its proper application to many injuries so originating.”
In the case of Transportation Co. v. Chicago (99 U., 635), the Supreme Court, by Justice Strong, says:
“Acts done in the proper exercise of governmental powers and not directing encroaching upon private property, though by their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents or give any right of action. This is supported by an immense weight of authority.”
Speaking of the cases of Pumpelly v. Green Bay Co. and the Eaton case in 51 N. H., the court says :
“ In those cases there was a physical invasion of the real-estate of the'private owner and a practical ouster of his possession.”
*31 The case in the 99 U. S. was decided many years after the decision in the Pumpelly case, and from the decision there does not appear to be any dissent.
In the case of Eaton (51 N. H. supra) the court says:
“ There is another class of cases distinguishable from the ■ present by the fact that the complainant in those cases has been deprived only of the privilege which he had enjoyed, in common with the rest of the public, of using public property. No private or exclusive right is invaded. The act complained of is merely a regulation of a public right. Suppose that the State cause or authorize an obstruction to the navigation of a navigable river which belongs to the State,, but do not thereby invade or flood the lands of the riparian owner. The diminished facilities for navigation may render the adjacent land less valuable; but so may a lawful change in the mode of occupying an adjacent tract of land belonging to a private owner.”
In the case of Lansing v. Smith et al. (8 Cowen, 146), it is said:
u The statute (sess. 46, ch. 111) authorizing the construction of a basin in the Hudson Eiver, in the city of Albany, and erections, whereby the docks, etc., owned by'individuals above were rendered inaccessible, or less easily approached by vessels, etc., and therefore much depreciated in value, though it provided no compensation for such a consequence, is not unconstitutional, either as taking private property for public use without compensation or impairing the obligation of contracts.
“This is not a direct invasion of private property, but remote and consequential merely, and arising from a public improvement. The injury is one to which individuals must submit as the price of the social compact; and, in the eye of the law, the injury is dammm absque injuria.”
In the case of the Canal Appraisers of the State of New York v. The People (17 Wend., 571), the plaintiff sought to recover damages because of the improvement of the Mohawk Eiver, whereby the water in a tributary stream was raised so as to destroy a valuable mill site, the court held that the party was without remedy; saying:
“ If in the improvement of the navigation of a public river the waters of a tributary stream are so much raised as to • destroy a valuable mill site situate thereon and the stream be generally navigable, although not at the particular locality of the mill site, the owner is not entitled to damages within the provision of the canal laws directing compensation to be made for private property taken for public use.”
- In the same direction is to be found the doctrine of the case of McKeen v. The Delaware Division Canal Co., 49 Pa. St., 425:
*32 “ Where the deed of the Lehigh Company conveyed to the purchasers of water lots, with, water powers, the right of drawing a special quantity of water under a given head, expressly providing that the grant should not at any time interrupt or impair the navigation, and without guaranteeing when, where, how, or to what extent of fall the water should be used: Held that the property of the vendees was that of the ordinary ownership of a water power; and the injury which followed the swelling of the water of the Lehigh by raising the dam at its mouth to improve the navigation of the Delaware Canal Company was consequential only and without remedy, unless Conceded by the State as an act of grace.”
The case of the People ex rel. Lomis and the Canal Appraisers was a proceeding by mandamus, to comj>el the canal appraisers to assess and appraise damages which the relator alleged he had sustained because of a diversion of the waters of the 'MohawkRiver. In a most exhaustive and elaborate opinion the court decided that “Riparian owners along the stream are not entitled to any damages for any diversion or use of the waters of the Mohawk by the State.”
. That case involved the general principle at issue in this case, to wit, the liability of the State for consequential damage to riparian owners because of the improvement of the river,where is not shown that there has been a ]hiysical invasion of the property, and no property is actually taken and appropriated.
The case of Commissioners of Homochitto River v. David D. Withers (29 Miss., 1) involved the question of the power and liability of the State in the improvement of navigable rivers. The plaintiff brought a suit in chancery to enjoin the commissioners from executing a public improvement on said river, alleging “That he owns a large and valuable plantation on Old River, and as such owner is entitled, as appurtenant to his plantation, to the uninterrupted flow of the river in its natural course, which the State can not interrupt,” without compensation being first made.
The injunction was denied; and in the decision of the cause the court said:
“The legislature has general power to pass laws providing for measures of internal improvement of the public rivers and other highways within the limits of the State, subject to the restrictions and limitations in the Constitution. One of these restrictions is, that private property shall not be taken or applied to the public use without just compensation: Held, thatin contemplation of this clause in the Constitution, it means *33 such property of a specific, fixed, and tangible nature, capable of being had in possession and transmitted to another, as houses, lands, and chattels.
“ It is difficult to understand how a person can be said to have property in water, light, or air, of so fixed and positive a character as to deprive the sovereign power of the right to control it for the public use and general convenience. Such a right exists as to individuals, and it can not be interfered with bythein; but the State, in virtue of her right of eminent domain, has the paramount right to control and dispose of everything within her limits which is not absolute and exclusive private property, to the promotion of the public good; and even to take private property for the same purpose upon rendering a just compensation lor the same.
“ From the nature of the elements of water, light, and air the right of an individual to them is necessarily qualified and confined to the time he has them in use and under his control, and must be held in subordination to the general good. They are movable and unfixed, incapable of individual appropriation and disposition, and must necessarily be subject to the power of the State for the general good of the community.”
In the case of Yates v. Milwaukee (10 Wall., 497) it was shown that the defendants destroyed, under the power of a city ordinance, the wharf of plaintiff as a nuisance, and in so doing entered upon the possession of plaintiff, taking his property by destroying it. The Supreme Court decided that the city council had no right in a summary way to declare the wharf aiiuisance or obstruction, but its character must be determined by general and fixed laws. In the decision of that question the court recognized the rights of a riparian owner, but qualified the recognition by the. limitation that they were “ to be enjoyed subject to general rules and laws, as the legislature may prescribe, for the protection of the public right in the river as a navigable stream.”
In the case of Stevens v. Patterson Railroad Co. (34 N. J. L., 532-549) a question similar to the one involved in this case came up for adjudication, and after elaborate reasoning upon the subject the court said—
u The steps which I have thus far taken have led me to this position: That all navigable waters within the territorial limits of the State, and the soil under such waters, belong in actual propriety to the public; that the riparian owner, by the common law, has no peculiar rights in this public domain as incidents of his estate, and that the privileges he possesses by the local custom or by force of the wharf act, to acquire such rights, *34 can, before possession bas been taken, be regulated or revoked at the will of the legislature. The result is, that there is no legal obstacle to a grant by the legislature to the defendants of that part of the property of the public which lies in front of the lands of the plaintiff and which is below high-water mark. It may be true that by such an appropriation the plaintiff will snstain a greater inconvenience than will other citizens whose land does not run along this river. But the injury to all is in its essence and character the same, the difference being only in degree. All persons who have occasion to approach this river over that part of the bank occupied by the railroad of the defendants may perhaps experience some inconvenience from the interposition of such works. The railroad, therefore, is somewhat of an impediment to the public rights of fishery and navigation.
“But no one, it is presumed, will pretend that such impediment is on that account illegal if authorized by the legislative authority; nor can the plaintiff complain because a difficult access to the water is a greater hardship to him, owing to the easy use of the water; in connection with his property in its natural condition, than it is to those who live at a distance from it. If it were true that no public imi>rovement can be made which in its execution will affect the property of one citizen more injuriously than it will that of another, many of the greatest works of the times would become impossible. No railroad or canal can be constructed which will not greatly benefit the lands of some persons and injure almost as greatly those of others. Every citizen is required at times to contribute something, by way of sacrifice, to the public good. Such partial evils is the price which is paid for the advantages incident to the social state. It is not necessary to refer extensively- to authorities in confirmation of the doctrine that, as a general rule, the public domain is subject altogether to the control of the legislature, and that incidental damage resulting to individuals from the exercise of such control gives no legal claim to.compensation.”
The same doctrine upon the subject of consequential damages growing out of the improvement of navigable rivers has been recognized by the Supreme Court of Connecticut: “The public, being the owners of the river, have an unquestionable right to improve the navigation of it without any liability for remote and consequential damages to individuals.” (Hollister v. The Union Co., 9 Conn. 444.)
It is not necessary to discuss further the legal propositions presented by the facts of this record, the law, in the opinion of the court, being very plainly indicated upon both points by the authorities cited. The counsel upon both sides have materially *35 contributed to tbe assistance of tbe court by tbeir exhaustive research in tbe preparation of tbeir briefs and in tbeir able presentation in oral argument. It is tbe opinion of tbe court that tbe law is with tbe defendants. And tbe petition is therefore dismissed.
Jn'ott, J,, did not sit in this case, and took no part in tbe decision.