Davis, J.,
delivered the opinion of the court:
Plaintiffs contend that they should recover from the United States compensation upon an implied contract for the use, upon *292 the Capitol Grounds, of a patent for improvement in' pavements.
It appears that Schillinger obtained a patent which has been supported by the courts upon several occasions; that by a series of assignments plaintiff Creecy became vested with all rights under the patent important to this case at the date when the petition herein was filed.
In 1875, when improvements to the Capitol Grounds were in contemplation, Creecy brought the Schillinger pavement to the attention of the Architect of the Capitol and bid for the work. His bid was rejected, and a contract was entered into with George W. Cook for pavement at a lower rate of compensation. Creecy then appealed to Congress for relief, and the Committee on Patents of the House of Representatives sent the case here under the Bowman Act, whereupon, in due course, and as directed in that act, we found the facts and returned them to the committee. This report was made on the 3d day of February, 1886, and apparently plaintiffs have not received the relief they thus sought, as they now sue the Government, upon the theory of an implied contract, for compensation for the use of the pavement.
It is contended that the invention was submitted to the Architect of the Capitol, an officer authorized by law to make contracts; that it was examined by him and its use offered through the bid made to lay the pavement. The fiudings show this contention to be correct. Plaintiffs, however, go further; saying that the Architect “adopted” the invention “by the use thereof.” This allegation we shall have occasion to examine later. Urging it to be correct, plaintiffs contend that the case falls within the principle of McKeever’s Case (14 C. Cls. R., 396, affirmed, without opinion, by the Supreme Court); of Palmer’s Case (20 C. Cls. R., 432, affirmed 128 U. S. R., 262), and of Forehand’s Case (23 C. Cls. R., 480), in which the court held:
“It will be noticed that in all cases in which the contentions have been sustained here, that there existed an implied contract between the inventor and the Government; there have been communications of some kind between the inventor and proper officers of the Government. The inventor had offered his invention; had called attention to his alleged rights; had claimed compensation, or in some equivalent manner had put the Government upon their guard and done some act tending ing to establish privity between them and him.”
*293 We do not decide in this case whether the Cook pavement embodied Schillinger’s invention, nor do we purpose to rule upon the validity of the patent. The discussion is reduced to one question, to wit: Whether, admitting the patent to be valid and the Cook pavement to be an infringement, there was a contract between plaintiff and the G-overnment.
Plaintiff Creecy offered his invention to defendants and they refused it. He himself avers in his petition that ‘‘they [he and his then associate] protested against the use of their patent without compensation, and notwithstanding such protest and notice the said Architect Clark caused the said artificial stone sidewalk' to be laid under the said Schillinger patent, and it has all been laid under the said Schillinger patent without any compensation to your petitioners, and contrary to the laws of the United States.” The findings show that Creecy protested against the contract being awarded to Cook and warned the Architect against infringing the same; that he threatened an injunction “to prevent any further violation of the patent,” and stated in writing that “unless the contractor, Cook, shall make satisfactory arrangement with us we will not permit the further violations of the patent rights of Schillinger.” The Architect fully understood plaintiffs’ position before he signed the contract with Cook, but preferred to accept the lower bid and.protect the Government against infringement on Cook’s part by a guaranty clause in the contract.
None of this tends to disclose contract relations between the plaintiffs and the United States, unless a patentee has rights against his Government which do not exist in the relations between individuals. There was no acknowledgment of the rights of the patentee (Hollister v. Benedict Manufacturing Company, 113 U. S. R., 67); on the contrary, the Architect having awarded a contract to a rival bidder, the allegations of plaintiffs tend to show an infringement of his rights by this, contractor (Cook), who certainly was not an agent of the Government. Creecy, in his dealings with the Architect, as well as in his application to Congress, seems to have proceeded upon the theory of infringement, not contract.
Plaintiffs had notified the Government; had called attention to their alleged rights; but those rights had never been acknowledged by the Government. On the contrary, they were in effect denied by a refusal of his bid, a danger to the Govern *294 ment, though a possible infringement on the part of the contractor, Cook, was provided against in, the clause whereby Cook bound himself to protect the Government against any suits for infringement.
It has been earnestly urged here in argument that in patent cases the relations of the Government to the citizen and their mutual duties and rights are not to be measured by the same standard as that adopted for the settlement, in courts, of disputes between individuals, in relation to the same subject-matter.
The argument rests substantially upon this provision in the fifth article of the Constitution: “ nor shall private property be taken for public use without just compensation.” Therefore, it is said, any taking or use by the Government of property actually owned by an individual must be presumed a legal taking, from which a promise of compensation will necessarily be inferred. A paraphrase of the argument may be thus stated: The King can do no wrong$ he can not commit an act which 'would fall within the common-law definition of torts; therefore any apparent invasion of the rights of a citizen by the Government must be construed a lawful act, for which compensation is promised. Carried to its extreme, this argument might prove that under no circumstances whatever could the Government commit an injury to an individual, and might bring within the general jurisdiction of this court suits in admiralty for collision, and actions for the destruction of property by military officers. It was said in counsel’s argument of the Forehand Case:
“ TheKingcan do no wrong,while an individual may. Where the infringement is made by the authority of the Department, and not at the caprice of the employé, under the assumption that the Government wilfully wrongs no man, an implied contract to pay may justly be assumed.”
The maxim thus quoted is, however, much broader in its language than in its spirit, and in England it has been construed to mean that the King is under, not above, the laws, and is bound by them equally with his subjects.
“ For though the King is not himself under the coercive power of the law, yet in may cases his commands are under the directive power of the law which makes the act itself .invalid if unlawful, and so renders the instrument of execution thereof obnoxious to punishment. * * * The Crown can *295 not dispense with anything in which the subject has an interest, nor make a grant in violation of the common law of the land, or injurious to vested rights. In this sense it is that while a sovereign himself is in a personal sense incapable of doing wrong, yet his acts may in themselves be contrary to law, and on that account be avoided or set aside by the law.” (Broom’s Legal Maxims, 51 et seq.)
Langford’s case distinctly decides that the maxim “ the King can do no wrong” has no place in our system of government. The argument made in that case was like that made here, and is thus stated by the court:
“ (1) That the maxim of English constitutional law that the King can do no wrong is one which the courts must apply to the Government of the United States, and that therefore there can be no tort committed by the Government. (2) That by virtue of the constitutional provision that private property shall not be taken for public use without just compensation, there arises in all cases where such property is so taken an implied obligation to pay for it.”
As to this the court said :
“ It is not easy to see how the first proposition can have any place in our system of government. * * * We do not understand that either in reference to the Government of the United States, or of the several States, or of any of their officers, the English maxim has an existence in this country.” [Langford v. United States, 101 U. S. R., 341.)
Proceeding to the second point the court said they were not prepared to deny that when the Government, “ by such formal, proceedings as are necessary to bind it,” takes for a public purpose land “ to which it asserts no claim of title, but admits the ownership to be private or individual, there arises an implied obligation to pay the owner its just value.”
Again:
“We are not called on to decide that when the Government, acting by the forms which are sufficient to bind it, recognizes the fact that it is taking private property for public use, the compensation may not be recovered in the Court of Claims.”
The italics are in the opinion of the Supreme Court.
Three points of importance to our present purpose are made by this case.
The distinction between actions ex delicto and actions ex con-tractu as against the Government is maintained.
It concedes that the taking of private property for public *296 use may bind the Government as upon an implied contract, provided the Government acts by such formal proceedings as aré sufficient to bind it, and also recognizes that the taking is of property to which it asserts no claim of title, but admits the ownership to be private or individual.
In Campbell v. James (104 U. S. R., 356) the court decided that when the Government issues letters patent for a new invention or discovery in the arts it confers upon the patentee an exclusive property in the patented invention. “ It can not be appropriated or used by the Government itself, without just compensation, any more tfian it can appropriate or use without compensation land which has been patented to a private purchaser;” and of this the court said “they had no doubt.” They further said:
“The United States has no such prerogative as that which is claimed by the Sovereign of England, by which it can reserve to itself, either expressly or by implication, a superior dominion and use in that which it grants by letters patent to those who entitle themselves to such grants. The Government of the United States as well as the citizen is subject to the Constitution, and when it grants a patent the grantee is entitled to it as a matter of right, and does not receive it, as was originally supposed to be the case in England, as a matter of grace and favor.”
These propositions are now admitted law, and need no further discussion.
There appears, however, in this opinion an important dictum. The court said:
“ But the mode of obtaining compensation from the United States for the use of an invention, when such use has not been by the consent of the patentee, has never been specifically provided for by any statute. The most proper forum for such a claim is the Court of Claims, if that court has the requisite jurisdiction. As its jurisdiction does not extend to torts, there might be some difficulty, as the law now stands, for prosecuting in that court a claim for the unauthorized use of a patented invention, although where the tort is waived and the claim is placed upon the footing of an implied contract, we understand that the court has in several recent instances entertained the jurisdiction.
“ It is true it overruled such a claim on the original patent in this case presented in 1867, but according to' more recent holdings it would properly now take cognizance of the ease. The question of its jurisdiction has never been presented for the consideration of this court, and it would be premature for us *297 to determine it now. If tbe jurisdiction of the Court of Claims should not be finally sustained, the only remedy against the United States, until Congress enlarges the jurisdiction of that court, would be to apply to Congress itself.
. “ The course adopted in the present case of instituting an action against the public officer who acts only for and in behalf of the Government is open to serious objections. We doubt very much whether such an action can be sustained. It is substantially a suit against the United States itself, which can not be maintained under the guise of a suit against -its officers and agents, except in the manner provided by law. We have heretofore expressed our views on this subject in Carr v. The United States (98 U. S. R., 433), where a judgment in ejectment against a Government agent was held to be no estoppel against the Government itself.”
In the Great Falls Case (112 U. S. R., 656) the court affirmed the judgment in favor of plaintiffs entered below, notwithstanding the fact that formal proceedings in condemnation of the land in question had not been prosecuted to a decision, and this upon the ground that the Government recognized the property as private, individual property to which it asserted no title, and that the taking was for a public use.
At the same term was decided Hollister v. The Benedict Manufacturing Company (113 U. S. R., 59), a suit in equity against a Government agent for alleged infringement of a patent for revenue stamps. One of the defenses was that defendant acted officially, and the court, citing Campbell v. James, said:
. “ If the right of the patentee was acknowledged, and without his consent an officer of the Government, acting under legislative authority, made use of the invention in the discharge of his official duties, it would seem to be a clear case of the exercise of therightof eminent domain, upon which the law would imply a promise of compensation, an action on which would lie within the jurisdiction of the Court of Claims.”
The court said:
“ It may be that even if the exclusive right of the patentee were contested, such an action might be brought in that court involving all questions relating to the validity of the patent.”
But the court did not decide this question.
In the opinion affirming the judgment of this court in Palmer’s Case (128 U. S. R.,269) the Supreme Court said:
“ The assumption of the appellant is erroneous. No tort was committed or claimed to have been committed. The Government used the claimant’s ‘improvements with his consent, and *298 certainly with the expectation on his part of receiving a reasonable compensation for the license. This is not a claim for an infringement, but a claim of compensation for an authorized use — two things totally distinct in the law, as distinct as trespass on land is from use and occupation under a lease. The first sentencé in the original opinion of the court below strikes the key-note of the argument on this point. It is as follows: ‘ The claimant in this case invited the Government to adopt his patented infantry equipments, and the Government did so. It is conceded on both sides that there was no infringement of the claimant’s patent, and that whatever the Government did was done with the consent of the patentee and under his implied license.’ We think that an implied contract for compensation fairly arose under the license to use, and the actual use, little or much, that ensued thereon. The objection, therefore, that this is an action for a tort falls to the ground.”
After quoting Campbell against James as in accord with the present views of the court, the court added:
“In our judgment the Court of Claims has jurisdiction to entertain claims and demands of the character presented in the present suit. Whether a patentee may waive an infringement of his patent by the Government, and sue upon an implied contract, is a question upon which we do not express an opinion.”
A careful examination of these cases shows that a contract to pay is implied whenever the Government, acting through a competent agent, takes or uses individual property, acknowledging explicitly or tacitly that the property is individual property. No formal proceedings in condemnation are necessary to this result. Where, however, there is a denial of private right in an alleged patent, and the invention is nevertheless appropriated or used by the Government, the appropriation or use is in the nature of a tort, and an action thereon is not within the general jurisdiction of this court. So if it had not been disputed that the Schillinger patent was valid and the invention had been used by.the Government, acting through a competent agent, a contract for royalty would be implied. It appears, however, that the Government was far from acknowledging any right in plaintiffs, nor did it even recognize that the Cook pavement embodied the Schillinger invention. Every act of the Architect was openly adverse to plaintiffs’ alleged rights, and therefore from these acts no contract can be implied. There may be a distinction between the taking of intangible property, such as a patent right, and the taking of tangible property in this, that by the Government’s use of a *299 patent right the owner loses nothing per se through the taking; whereas if atangible article be appropriated the owner instantly becomes so much the poorer. So if the Government actually acquire the property, even through the act of an agent not competent, a contract to pay for it is implied; while the use of a patented process or article may directly deprive the owner of nothing of intrinsic value, but be simply an invasion of a right, an act which, to bind the Government, must be performed by a competent agent.
We are of opinion that there was no contract between plaintiffs and the Government, and on that ground the petition is dismissed.