Weldon, J.,
delivered tbe opinion of tbe court:
Tbe claim in tbis proceeding originates from an alleged appropriation, on tbe part of tbe defendants, of tbe literary-work of tbe claimant, as secured to bim in tbe copyright of various editions of a book known as “A Dictionary of Congress,” by tbe publication of wbat is known as “Tbe Congressional Directory.”
Tbe first edition of tbe dictionary was published in 1859, and continued through several editions, embracing substantially tbe same general character. Tbe Congressional Directory, published by tbe defendants in tbe year 1867, still continues, being enlarged from year to year by tbe addition of new matter.
Tbe suit was originally commenced in tbe ordinary form under tbe Bowman Act; but on tbe 24th of March, 1891, tbe claimant filed a petition, alleging, as it is claimed, a legal cause of action, demanding a large amount of damages because of tbe acts of tbe defendants. Up to tbe year 1867 some of tbe editions of tbe dictionary were printed and published by tbe claimant at bis own expense and cost, and other editions were published by tbe defendants at tbe Public Printing Office at tbe expense of tbe United States, the defendants paying claimant a royalty of $1 per volume.
In tbe year 1867 Congress determined to change tbe plan with reference to tbe publication and procurement of tbe matter usually embraced in tbe dictionary, and issued tbe first edition of tbe directory, as shown, by tbe findings and exhibits.
A very large number of names of members of Congress contained in tbe edition of tbe dictionary preceding tbe year 1867 *262 are contained in tbe first number of the Congressional Directory issued in 1867.
In the issue of the Forty-ninth Congress, first session, the Congressional Directory contains fifteen Senators and nine Eepresentatives whose names appear in the dictionary referred to as Exhibit D, and which was the last edition of claimant’s dictionary as published by him. The character of the gravamen of the claimant’s case is best defined by the allegations of his petition, in the following words:
“That in the year 1867, at his own labor and cost, your petitioner prepared and published the last edition of his said dictionary, which edition he was unable to sell either to Congress or to the public, to his great pecuniary loss and damage, and to his permanent injury and loss, by reason of the following facts: That at the second session of the Forty-first Congress, without your petitioner’s having sold or surrendered to the United States, or to any other person, his copyright, or any of his rights of property, in said dictionary, and without his consent or acquiescence, said Congress, on behalf of the United States, seized upon his said “Dictionary of Congress,” infringing his copyright and invading his right of private property, and incorporated the plan and contents thereof into a public document called a “ Congressional Directory,” and caused the publication and the free distribution thereof at the public expense.”
Nothing is better settled in the law than the right of persons to be protected in the results of their labor, whether it be mental or physical; and to guard that right from the encroachments of the Government the Constitution provides: “Nor shall private property be taken for public use without just compensation.” The recognition of the law of the property right of the author and inventor is founded upon that clause of the Constitution which gives Congress the right “to promote the progress of science and the useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries.”
At the time the defendants issued the “Congressional Directory” the claimant had a copyright property in “A Dictionary of the American Congress,” and if there has been such a use of the material of said “dictionary” by the defendants as to give this court jurisdiction, then the claimant would be entitled to recover the value of that property so appropriated. The preliminary question is whether the court has jurisdiction *263 of tbe alleged cause of action as shown by tbe averments of petition.
Assuming tbe allegations of tbe petition as a correct statement of tbe manner in wbicb tbe defendants approprited tbe alleged property of tbe claimant, we proceed to consider whether under tbe statutes of our jurisdiction there is any power in tbe court to determine any of tbe rights of tbe parties.
■ Tbe law applicable to this case bears a close analogy to tbe law applicable to patent rights, wbicb have become tbe subject-matter of litigation in this court between claimants and tbe United States. In tbe case of Shillinger et al. v. United States (24 C. Cls. R., 278) tbe court held that a contract may be implied “whenever tbe Government, acting through a competent agent, takes private property acknowledging explicitly or tacitly that it is such'. But where there is a denial of a right in tbe alleged invention used by tbe defendants, tbe appropriation or use is in tbe nature of a tort, and in such á case tbe court is without jurisdiction.” Where tbe authorities of tbe Government do not recognize tbe right of tbe claimant to tbe alleged property, but proceed in tbe appropriation upon tbe theory that it belongs to tbe United States, there no contract can arise, and if there is in fact and law an invasion of private right, it is a wrong to be remedied in some other form than by a proceeding in this court.
In tbe case of Campbell v. James (104 U. S. R., 356) the court said:
“ Tbe United States has no such prerogative as that wbicb is claimed by tbe sovereigns of England, by wbicb it can reserve to itself, either expressly or by implication, a superior dominion and use in that wbicb it grants by letters patent to those who entitle themselves to such grants. Tbe Government of tbe United States, as well as tbe citizen, is subject to tbe Constitution; and when it grants a patent, tbe grantee is entitled to it as a matter of right, and does not receive it, as was originally supposed to be the case in England, as a matter of grace and favor.
“But tbe mode of obtaining compensation from tbe United States for tbe use of an invention, where such use has not been by tbe consent of tbe patentee, has never been specifically provided for by any statute. Tbe most proper forum for such a claim is tbe Court of Claims, if that court has tbe requisite jurisdiction. As its jurisdiction does not extend to torts, there might be some difficulty, as tbe law now stands, *264 in prosecuting in that court a claim for tlie unauthorized use of a patented invention; although where the tort is waived, and the claim is placed upon a footing of an implied contract, we understand that the court has in several recent instances entertained the jurisdiction. It is true, it overruled such a claim on the original patent in this case, presented in 1867; but, according to more recent holdings, it would properly now take cognizance of the case. The question of its jurisdiction has never been presented for the consideration of this court, and it would be premature for us to determine it now. If the jurisdiction of the Court of Claims should not be finally sustained, the only remedy against the United States, until Congress enlarges the jurisdiction of that court, would be to apply to Congress itself.”
In affirmation of the decision of this court United States v. Palmer (128 U. S. R., 269) the Supreme Court said:
“The assumption of the appellant is erroneous. No tort was committed or claimed to have been committed. The Government used the claimant’s improvements with his consent; and certainly with the expectation on his part of receiving a reasonable compensation for the license. This is not a claim for an infringement, but a claim of compensation for an authorized use — two things totally distinct in; the law as distinct as trespass on lands is from use and occupation under a lease. The first sentence in the original opinion of the court below strikes the keynote of the argument on this point. It is as follows: ‘The claimant in this case invited the Government to adopt his patented infantry equipments, and the Government did so. It is conceded on both sides that there was no infringement of the claimant’s patent, and that whatever the Government did was done with the consent of the patentee and under his implied license.’ We think that an implied contract for compensation fairly arose under the license to use, and the actual use, little or much, that ensued thereon. The objection, therefore, that this is an. action for a tort falls to the ground.
“In our judgment the Court of Claims has jurisdiction to entertain claims and demands of the character presented in the present suit. Whether a patentee may waive an infringement of his patent by the Government and sue upon an implied contract is a question on which we do not express an opinion.”
In this case the claimant is not seeking redress as upon an implied contract, and the question of his right to waive the tort does not arise.
Whatever may have been the tendency of judicial decision in the enlargement of the jurisdiction of this court in cases *265 where the defendants have nsed and appropriated private property, we think the statute of 1837 fixes and defines the exact boundaries of judicial power to be exercised by the Court of Claims and all other courts where the Government is made a defendant. It is provided:
“All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable.’7 (1 Sup. Rev. Stat., 2d ed., pp. 559.)
Not only do the allegations of the petition show that the taking and use of the alleged property was tortious, but the findings in the statement of the acts of the defendants clearly indicate that the taking would at common law, if such property was the subject of its jurisdiction and care," be a wrong without force upon the rights of the claimant.
It will be seen that the act of March lindts the jurisdiction of the court to cases “not sounding in tort.” The case which the claimant makes by his petition, and as shown by the find ings, clearly indicate every element of a civil injury to the alleged right of claimant, for which at common law he would have to sue in a form ex delicto. Whenever the alleged cause of action arises out of the fault of the defendants, or from their negligence as distinguished from their obligations, undertakings, or contracts, it may be said that the action “sounds in tort,” and the courts are prohibited from assuming jurisdiction in such cases.
The publication of the Congressional Directory in 1867 and its continued publication since that time may have interfered with the sale of the claimant’s book; but to what extent it is very difficult to determine. Whether the directory is a violation of the property rights of the claimant as secured to him in the dictionary is a question upon which we do not express an opinion, as that question is involved in the merits of the cause. We have given the publications as they exist in fact, and if we have the power to investigate the question of the legal identity of the two publications, we reserve that question until we are so advised. This suit was commenced on the 24th *266 of March, 1891, so that all rights accruing to the claimant before the 24th of March, 1885, would be barred by the statute of limitations limiting suits to six years.
This court has decided that where there is a continuous use of a patented article implying a contract on the part of the Government to pay for the use, the statute of limitations commences to run six years before the commencement of the suit.
u If an action be brought to recover a royalty for each patented article manufactured and used by the Government without a license or express agreement, the statute of limitations will apply to all that entered into the Government’s use more than six years before the bringing of the action.” (23 C. Cls. R., 335.)
Begarding this proceeding as “ sounding in tort” within the meaning of the statute of March 3, 1887, we are compelled to dismiss the petition.
Nott, J., did not sit in this case.