Peelle, J.,
delivered the opinion of the court:
The claimant seeks to recover, on the theory of an implied contract, the license fees or royalties for'the use, by the defendants’ contractors, of his patented device for calking-vessels.
The facts from which the claimant contends an implied contract arises are substantially these: Before the issuance of letters patent to the claimant he submitted his method of calking to the then Chief of the Bureau of Construction and Repair of the Navy Department, to whom he said he was going to apply for a patent, and that officer expressed his belief that the invention was a good one, and for the claimant, to go ahead with it; that he would recommend it. After the issuance of letters patent tests of the device were made under the direction of said Bureau, which proved satisfactory, of which the claimant was informed by the Chief of said Bureau. Thereafter the contractors, to whom contracts were awarded for the construction of the.vessels in controversy,, *502 were by a provision in the specifications, set forth in the findings, required to use the Brooks method of calking; and to protect the Government against any and all claims and demands of any nature on account of the use by the contractors, of any patented invention in or about the construction of said vessels the sixth paragraph of the contract, set out in the finding's, was inserted.
From the fifth finding of fact it appears that when the Government desired to use the claimant’s method of calking-on the U. S. S. Petrel through its own officers, doubtless for the purpose of further testing the device, terms therefor were sought from the claimant, who responded that his method of calking might be used thereon “ Avithout any charge.” This correspondence shows that the Government continued to recognize in the claimant a legal property right in his iiwention, and this while the invention was being applied to the vessels contracted for.'
The claimant contends that the act of the Navy Department in adopting, and requiring contractors to use, his patented invention, coupled with its use by them, operates in law as a taking of private property for public purposes, for which an implied contract arises to make compensation within the meaning of the last clause of the fifth article of the '.Constitution, which provides:
“ Nor shall private property bo taken for public purposes Avithout just compensation.”
The first question, therefore, is, What is a taking within the meaning of that clause of the Constitution? We think it may be regarded as settled law that where an officer of the Government, haAdng authority to act, takes or appropriates to public use property, admitting it to be private property, an implied contract will arise to make compensation. (United States v. Great Falls Manufacturing Co., 112 U. S., 645.) In that case, hoAvever, as the taking was by legislative authority, it was clearly the exercise of the right of eminent domain; but in the case of the United States v. Berdan Firearms Co. (156 U. S., 552) a recovery was had on an implied contract for the use of a patented invention, though no act of Congress authorized such use.
*503 And so it has been held that when the Government, by its proper officer, uses a patented invention, acknowledging the right of the patentee thereto, an implied obligation will arise to pay therefor (Hollister v. Benedict Manufacturing Co., 113 U. S., 59; United States v. Palmer, 128 U. S., 262) ; and this upon the theory, as was held in the case of James v. Campbell (104 U. S., 356), that the right of the patentee, under letters patent granted by the Government, was exclusive of the Government as well as of all others and stood on the same basis as other property.
On the other hand, it has been held that when an office]- of the Government, having authority to act, takes and holds the possession of property under claim that it belongs to the Government, no implied contract will arise to pay for the use and occupation. (Langford v. United States, 101 U. S., 341.)
In the case of Schillinger v. United States (155 U. S., 163), affirming the judgment of this court (24 C. Cls. R., 278), where a contractor -of the Government had used a patented invention in the execution of his contract without the consent and over the protest of, the owner of- the patent, the court held that such use was “ plainly and solely an action for an infringement ” — a tort — the remedy for which, under Revised Statutes 4919, was an action on the case, of which this court had no jurisdiction. But in commenting on the case of United States v. Palmer (supra), which was a claim for compensation for an authorized use of a patented invention, and therefore not an infringement, the court in the Schillinger case said:
“ Here the claimants never authorized the use of the patent right by the Government; never consented to, but always protested against it, threatening to interfere by injunction or other proceedings to restrain such use. There was no act of Congress in terms directing, or even by implication suggesting, the use of the patent. No officer of the Government directed its use, and the contract which was executed by Cook (the contractor) did not name or describe it. There was no recognition by the Government or' any of its officers of the fact that in the construction of the pavements there was any use of the patent or that any appropriation was being made of claimant’s property. The Government proceeded as though it were acting only in the management' of its own *504 property and the exercise of its own rights and without any trespass upon the rights of the claimants. There was no point in the whole transaction from its commencement to its close where the minds of the parties met or where there was anything in the semblance of an agreement. So not only does the petition count upon a tort, but also the findings show a tort. That is the essential fact underlying the transaction and upon which rests every pretense of a right to recover. There was no suggestion of a waiver of the tort or a pretense of any implied contract until after the decision of the Court of Claims that it had no jurisdiction over an action to recover for the tort.”
Whether, when a contractor in the execution of his contract uses a patented invention and the Government accepts the work so done, the owner of the patent can waive the tort and sue on an implied contract, is not involved in this case, because the invention was submitted to the Government and by it tested and adopted, of which the owner was notified, and the Government thereafter required that particular method of calking to be used by incorporating the same in the specifications for the construction of its vessels.
In the Schillinger case the court, in connection with the language quoted from that case, says:
“ There was no act of Congress in terms directing, or even by implication suggesting, the use of the patent. No officer of the Government directed its use, and the contract which was executed by Cook (the contractor) did not name or describe it. There was no recognition by the Government or any of its officers of the fact that in the construction of the pavements there was any use of the patent or that any appropriation Aras being made of claimants’ property.”
Not so in the present case, for here the Government knew that the Brooks method of calking was protected by letters patent. Not only so, but the Chief of the Bureau of Construction and Repair of the Navy Department had advised the claimant to procure a patent and that he would recommend its use. To that end the method of calking was tested and its use was required. This being so, we think it matters not whether the contractor knew that the Brooks method of calking was protected by letters patent or whether it procured from the owner a license for its use, for the Govern *505 ment had obtained such authority, and by incorporating in the specifications that the contractor should use that particular method of calking it was bound to know that the contractor could not execute its contract without using the claimants’ patented invention.
It is not controverted that the Secretary of the Navy was authorized by law to construct the vessels in controversy and to construct them in the most improved way, to do which he was necessarily clothed with large discretion, both as to the materials and methods to be used, as was the Secretary of War in the case of the Great Falls Manufacturing Co. v. The Attorney-General (124 U. S., 581) in determining what land should be. taken to carry out, in the best manner, the object Congress had in view by the act in that case, though he took lands outside the survey and map which the act directed to be first made showing the lands to be taken.
And so in the case of Hollister v. Benedict Manufacturing Co. (supra) the court said:
“ If the right of the patentee was acknowledged, and, without his consent, an officer of the Government, acting under legislative authority, made use of the invention in the discharge of his official duties, it would seem to be a clear case of the exercise of the right of eminent domain upon which the law would imply a promise of compensation, an action on which would lie, within the jurisdiction of the Court of Claims, such as was entertained and sanctioned in the case of the United States v. The Great Falls Manufacturing Co. (supra).”
In the case of United States v. Lynah (188 U. S., 445-464), after a careful review' of the authorities respecting what is a taking of private property for public purposes, the court says:
“ The rule deducible from these cases is that when the Government appropriates property which it does not claim as its own it does so under an implied contract that it will pay the value of the property it so appropriates.”
And so this court, in the case of Gibson v. United States (29 C. Cls. R., 18-25), respecting what constitutes an implied contract, said:
“ There can be no contract unless the parties, either by *506 expression or implication, agree; and where the United ” States deny the title of plaintiff in a taking, the law will not imply, as against the claim of the Government, an agreement to pay. Contracts are made by the agreements and implications arising from acts of parties and not from their denials and differences.”
Now, let ns apply the rules deducible from the authorities cited to the present case. There is no contention that the Government asserted any ownership in the Brooks method of calking. On the contrary, the Government conceded not only that the method was patented, but that the claimant was the owner thereof; and, with that knowledge on the part of its responsible officers, entered into sundry contracts whereby its contractors were obligated in express terms to use that particular method of calking in the construction of its vessels, and it has received the benefit thereof.
The claimant does not appear to have had any dealings with the contractors looking to the use of his invention by them separate from the Government, to whom he had given authority to use. Nor was the claimant, after his invention had been adopted for use by the Government and incorporated in its specifications, bound, especially in the absence of any notice thereof, to pursue the several contractors who had used his invention with the authority and direction of the Government.
Where the United States enter into a contract in which the contractor agrees generally to indemnify and save harmless the Government from any claim growing out of the use by the contractor, without the consent of the OAvner, of any patented invention he may see fit to use in the execution of his contract, such as patented tools, machinery, and the-fiike, such use would clearly fall within the ruling in ih.é'ScMlUn-ger case as an infringement.
But when the Government, by its proper officer, having authority to use and appropriate a patented invention, the ownership of which it concedes in the patentee,, obligates a contractor, in express terms, to use such invention, it is bound to know that such contract can not be executed without the use-and consequent taking of such invention; and having been so taken, the Government can not successfully *507 defend on the ground that the use. by the contractor was an infringement for which no liability attaches to the Government, for the reason that the taking was by direction of the Government with the consent of the owner of the patent ^ ancl even if the use, as between the contractor and the owner ; of the patent, was an infringement, still as between the Gov- \ eminent and such owner the taking was by the Government with his consent, and to that extent it might be urged, though we do not think it necessary in this case, that the rule aui facit per alium facit per se would apply.
In other words, if the Government’s contract with the builders of the vessel had merely required satisfactory calking without specifying the Brooks patent, and the builders had used that device on their own motion, .it might well be held that the patentee’s only remedy was against the build-^"' ers; or if the contract had specified the Brooks patent, as it does, and there had been no prior agreement or understanding between the Government and the patentee whereby the Government had acquired his consent to the use of the invention as in this case, it might be held that no contract could be implied. But here the only privity which existed was between the Government and the patentee, and he was a stranger to the agreement between the Government and the builder; and the Government provided in its contract with the builder for the very contingency which has arisen, and is amply indemnified against loss by reason of any judgment which may now be rendered for the use of the claimant’s invention. Good faith on the part of the patentee required that he should allow the Government to use his invention either on vessels constructed by Government employees or on vessels constructed by Government contractors; and good faith on the part of the Government requires that it should see the patentee compensated as its officers promised he should be, and especially so when it has carefully protected itself against loss.
It would seem that when the United States required the contractor to use the claimant’s invention nothing was left to1 consummate the taking but the execution on the part of the contractor of the operative or mechanical act of its use. It is *508 in analogy as if the Government had employed the contractor to carry out its predetermined purpose in the use of the particular method of calking and thereby mediately instead of immediately reached the result.
The taking was not of a thing having physical existence, like lands or cattle, but was of an “ exclusive right” secured to the claimant by the Constitution (Art. I, sec. 8), which gives such right the character of property. And the laws which have been passed to give effect to that purpose have been construed, as Chief Justice Marshall said they ought to be, “in the spirit in which they were made.” (Grant v. Raymond, 6 Pet., 218-242.)
Therefore it seems clear to us that the exclusive right thus guaranteed by the Constitution, giving it the character of private property, which is so conceded by the authorized officers of the Government, can not be taken by them or by another through their contractual directions and appropriated to governmental purposes without the implication of a contract to make just compensation therefor, and, so believing, we must hold that the claimant is entitled to recover, and judgment is accordingly ordered to be entered in his favor for the sum of four thousand seven hundred dollars ($4,700).
Howry, J., was not present when this case was argued and took no part in the decision.