Peelle, Ch. J.,
delivered the opinion of the court:
To the amended petition herein the defendants demur on the ground “ that the allegations of fact in said amended petition contained do not constitute a cause of action against the United States.”
The facts well pleaded are that on March 20, 1894, letters patent were granted by the-United States to one Owen F. Leibert, who, on March 27, 1894, assigned all his right, title, and interest in and to said invention and letters patent to the Bethlehem Iron Company, the immediate predecessor of the claimant company herein (both being corporations organized under the laws of the State of Pennsylvania), which instrument of writing was duly recorded in the Patent Office of the United States. While the application of said Leibert. for said letters patent was pending the Secretary of War, by letter to the Commissioner of Patents, requested that officer to expedite action upon said application. February 12, 1894, the Chief of Ordnance, through Captain McNutt, inspector of ordnance, by letter of that date to the Bethlehem Iron Company, requested “ a description and detailed drawings upon a large scale of this invention, which may be used in connection with the patent specification for the consideration *372 of its merits,” which were furnished by said company in the form of blueprints illustrating the application of said invention to an 8-inch gun of its own, and also drawings “ showing another plan of applying mechanism to an 8-inch gun,” together with “ a description of the mechanism and the relations of the various parts.”
Further correspondence was had between said Bethlehem Iron Company and the officers of the Government respecting the use and application of the Leibert patent, and on June 29, 1894, said Captain McNutt, bjr letter of that date to said company, informed it that in equipping a 40-caliber 12-inch rifle, then being assembled at Watervliet Arsenal, with the Farcot breech mechanism it was “ the desire of the Chief of Ordnance to test, in connection therewith, the plans for which Mr. Owen Leibert has secured a patent. It is proj)osed to make a rack and pinion after Mr. Leibert’s designs and use them as alternative with like parts of the other design, the fittings being otherwise the same in each case. Will you please inform me whether the Department can secure from you the right to use these plans on this trial' gun without claim for compensation? ” which permission, as requested, was granted as to the “ one trial gun above referred to without claim for compensation on our part.”
November 7, 1891, the Bethlehem Iron Company had entered into a contract with the Government to manufacture one hundred 8, 10 and 12 inch breech-loading guns, and on October 12, 1897, after the issuance and assignment of said letters patent and when about fifteen of the guns so contracted for remained to be manufactured, General Flagler, the Chief of Ordnance, in a communication to said company, stated that “ the Department has no objection to your making the last fifteen 12-inch breech-loading guns under your one-hundred-gun contract of November 7, 1891, to conform to model 1895, instead of model 1888, M2, this change to cover both the new form of breech mechanism and the gun itself.”
The said fifteen guns so manufactured embraced the invention of said Leibert, and in the manufacture thereof it was agreed that there should be no modification or change in the price fixed in said contract of 1891.
*373 That by reason of the facts stated the Government thereby recognized said invention and patent as the property of said Bethlehem Iron Company.
On August 6, 1901, the said Bethlehem Iron Company assigned and conveyed to the Bethlehem Steel Company, claimant herein, all of its property rights and franchises, including said patent, and the affairs of said Bethlehem Iron Company were duly wound up and it ceased to exist.
On June 6, 1902, Congress passed an act as follows:
All contracts of the Bethlehem Iron Company, of South Bethlehem, Pennsylvania, heretofore made between it and the United States, excepting the contract of November 7, 1891, for one hundred eight, ten, and twelve inch guns shall be completed by its successor, the Bethlehem Steel Company, or its successor, which has acquired or may acquire all of its assets, and has assumed or may assume all of its liabilities under the said contracts, and the said Bethlehem Steel Company, or its lawful successor, upon giving good security in the same form and amount, conditioned for the performance by it of the said contracts, shall be substituted therein for the said Bethlehem Iron Company and be entitled to exercise all rights thereunder which the said Bethlehem Iron Company had or would have had if it had continued in existence. (32 Stat. L., 305, 308.)
Pursuant to the provisions of said assignment and conveyance, the claimant herein became the successor of the Bethlehem Iron Company.
That between March 5, 1898, and the filing of the petition herein, November 16, 1905, and within the period of six years next prior to filing said petition, the Government manufactured 130 guns “ with breech mechanism containing the said patented invention,” for which the reasonable royalty, at the rate of $500 per gun, amounting to $65,000, is due and unpaid.
What portion of said 1.30 guns were manufactured by the United States. during the lifetime of the Bethlehem Iron Company and what portion were manufactured since the succession thereto by the Bethlehem Steel Company, claimant herein, does not appear; but that spme of them were manufactured by the United States since the organization of the claimant company herein and the assignment thereto by the *374 Bethlehem Iron Company of all its right* title, and franchises, including the invention and patent aforesaid, is evident, as in the twenty-second paragraph of the petition it is averred that “ between March 5, 1898, and the date of the filing of the original petition herein (November 16, 1905), and during and throughout the period of six years next preceding the filing of said petition, the United States did manufacture and use large numbers of guns, to wit, 130 guns, other than those manufactured for and delivered to it by the said Bethlehem Iron Company or by the claimant, which were and are provided with breech mechanism containing the said patented invention.”
In addition to this, however, the claimant contends that, by virtue of the language in the act of June 6, 1902, above quoted, the Government thereby recognized the claimant company as the successor of the Bethlehem Iron Company, with the right to complete all contracts theretofore entered into between the Bethlehem Iron Company and the United States, “ excepting the contract of November 7, 1891, for one hundred 8, 10, and 12 inch guns.” But in view of the fact that some of the guns for which rojmlty is claimed herein were manufactured by the United States since the claimant became the successor by assignment of the Bethlehem Iron Company, of which the Government, its officers and agents, had notice, we need not now consider the office and effect of said statute res]3ecting the use by the United States of the claimant’s patent, for, as to the extent stated, it must be held that the demurrer is not well taken.
The facts set forth unquestionably show that the proper officers of the Government not only knew that letters patent had been issued to Owen F. Leibert for improvement in breech mechanism for ordnance, but that the same, with all the right, title, and interest of said Leibert, had been assigned to the Bethlehem Iron Company, the predecessor of the claimant herein. The Secretary of War requested the Commissioner of Patents to expedite action on the application for a patent and, after the assignment as aforesaid, several letters passed between the Bethlehem Iron Company and the defendants’ officers of the ordnance department looking *375 to the use of said invention and jDatent by the Government and which resulted in the Bethlehem Iron Company granting to the Government the right to use the patent in one trial gun without compensation.
Thereafter by permitting — after testing the mechanism— the use of the patent to the 15 guns manufactured under the contract hereinbefore referred to, the claimant contends that the Government thereby recognized the invention and patent-as the property of the Bethlehem Iron Company. That is to say, that the proper officers of the Government recognized that said invention was the private property of said company, and that therefore for any subsequent use of said invention and patent by the Government a contract was implied to make reasonable compensation therefor under the. ruling of both the Supreme Court and this court.
In the case of United States v. Lynah (188 U. S. R.., 445, 464) the court, after reviewing fully the authorities respecting the right of the Government to take private property for public use, said:
“ The rule deducible from these cases is that when the Government appropriates property which it does not claim as its own it does so under an implied contract that it will pay the value of the property it so appropriates. It is earnestly contended in argument that the Government had a right to appropriate this property. This majr be conceded, but there is a vast difference between a proprietary and a governmental right. When the Government owns property, or claims to owu it, it deals with it as owner and by virtue of its ownership, and if an officer of the Government takes possession of property under the claim» that it belongs to the Government (when in fact it doés not) that may well be considered a tor-tious act on his part, for there can be no implication of an intent on the part of the Government to pay for that which it claims to own. ' Very different from this proprietary right of the Government in respect to property which it owns is its-governmental right to appropriate the property of individuals. All private property is held subject to the necessities of government. The right- of eminent domain underlies all such rights of property. The Government may take personal or real property whenever its necessities or the exigencies of the occasion demand. So the contention that the Government had a paramount right- to appropriate this- property may be conceded, but the Constitution in the fifth amendment guar *376 antees that when this governmental right of appropriation — ■ this asserted paramount right — is exercised it shall be attended by compensation.
“ The -Government may take real estate for a post-office, a court-house, a fortification, or a highway; or in time of war it may take merchant vessels and make them part of its naval force. But can this be done without an obligation to pay for the value of that which is so taken and appropriated ? Whenever in the exercise of its governmental rights it takes prop- . erty, the ownership of which it concedes to be in an individual, it impliedly promises to pay therefor. Such is the import of the cases cited as well as of many others.”
Following those authorities the court, in the case of Alfred J. Brooks v. The United States (39 C. Cls. R., 494, 502), said:
“ We think it may be regarded as settled law that where an officer of the Government, having authority to act, takes or appropriates to public use property, admitting it to be private property, an implied contract will arise to make compensation.”
Nor will the Government, where it takes property for public use, conceding it to be private property, be heard to say that because there was no promise to pay therefor no contract is implied, as annexed to the use of property so taken without claim of ownership is an implied promise to make reasonable compensation. McKeever v. United States (14 C. Cls. R., 396) (affirmed bjr the Supreme Court without an opinion) ; United States v. Bigby (18S U. S., 401, and authorities there cited) ; United States v. Palmer (128 ib., 262), and United States v. Harvey Steel Company (196 U. S., 313) affirming-this court (38 C. Cls. R., 662).
If as averred in the petition the Government appropriated to public use the invention for which the claimant owned the patent, it did so knowing it was private property, and having used the patent without claim of ownership and without objection from the claimant or its predecessor, a contract thereby arose to make a reasonable compensation therefor.
In Harley v. United States (39 C. Cls. R., 105, 114), affirmed 198 U. S., 229, 234, where the court respecting an implied contract said:
“ In the case at bar the Court of Claims finds that the appellant 1 supposed and understood that he would be en *377 titled to compensation, and that it would be allowed and paid by the Secretary of the Treasury;’ but it also finds that ‘ on the part of the Secretary and Chief of Bureau (Engraving and Printing) it was supposed .and understood that the; claimant (appellant), being an employee of the Treasury Department, would neither expect nor demand remuneration.’ That there was ‘ a coming together of minds ’ is therefore excluded by the findings. And the use of the device can not give a right independent of the understanding under which it was used.”
The use of the patent -in that case, it was supposed and understood, would be without compensation, because the owner of the patent was at the time in the employ of the Treasury Department; and as there was no use of the patent independent of that understanding,.it was held that no contract could be implied to make compensation.
In the present case there is nothing to indicate that the claimant or its predecessor did not expect compensation for the use of the invention, and the contention of the Government that, because the claimant or its predecessor had no knowledge of the use by the Government of its patent at the time the 130 guns were being manufactured — for which royalty is claimed — therefore no promise to pay can be implied is not well founded for the reason that the use of the invention had been tendered to the Government by the claimant’s predecessor prior thereto, and the mechanism had been tested and actually used by the Government. The mechanism was specially adapted and designed for large guns — such as used by the Government — and the Government had recognized private ownership in the patent.
With such knowledge on the part of the officers of the Government respecting the private ownership of the patent, it would be a monstrous doctrine to hold that because the owner had no knowledge of the use of its patent at the particular time therefore no promise to pay can be implied. If it were so the owner of a patent would be compelled to keep sentinels on guard to learn when vigilant officers of the Government were appropriating his property for public purposes.
From the facts averred in the petition — summarized above — the court must hold that when the officers of the Gov *378 ernment appropriated the patented invention, recognizing it as private property, a contract was thereby implied to make reasonable compensation for such use.
For the reasons given the demurrer is overruled and the defendants are required to answer over.
Howry, J., was not present when this case was tried and took no part in the decision.