Barney, J.,
delivered the opinion of the court:
This is a suit to recover damages for property which it is claimed has been taken by the Government in the exercise *14 of its power of eminent domain, but for which no compensation has been made pursuant to the fifth amendment to the Constitution.
The defendants demurred to the petition on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was interposed after the evidence of the claimant had been taken, and was to the evidence as well as to the petition; but the demurrer to the petition only was presented and argued to the court and is alone before it for decision.
The petition alleges that the claimant is the owner of certain real estate situated upon the seashore in the State of Maine upon which is located a summer resort hotel, and cottages and other buildings used in connection therewith. That some years since the Government erected a fort, called Fort Foster, upon lands adjoining the lands of the claimant and distant about one thousand feet from the hotel and other buildings mentioned, and installed in said fort three 10-inch disappearing guns. That the project for the erection and maintenance of the guns so installed, or which may hereafter be installed therein, is such that the zone and range of fire of the same includes all of the real estate of the claimant; and that on one occasion these guns were discharged by the agents of the defendants, and that the concussion thereby produced did considerable damage to the said buildings.
It is contended by the claimant that the Government, by the location of the fort and the installation of its guns so that the zone of fire of the same is over and across her lands, has thereby established an easement in said lands, and taken property from the claimant for which it is liable to pay, pursuant to the fifth amendment to the Constitution. If material to the statement of the case at all, which is doubtful, the averment as to the single occasion when the concussion produced by the firing of the guns caused the injury to the buildings situated on the land described, can only answer the purpose of showing the extent of the damage to the claimant by the occupation of the easement as claimed.
The doctrine of sic utere tuo ut alienum non laedas has no application in this case for the reason that if there has been *15 any unjustifiable use by the Government of its own property to the damage of the claimant, however serious, but not amounting to a taking, it would clearly be damage for the recovery of which this court has no jurisdiction.
The law seems to be well settled that when an officer of the Government takes possession of property and appropriates it to the use of the Government, claiming it as belonging to the Government, there is no implied contract to pay for the same, and hence this court has no jurisdiction in a suit to recover damages for such taking; but when property is taken and appropriated by the Government under no claim of title an implied contract to pay for the same is raised and this court does have jurisdiction in such a case. (Schillinger v. United States, 24 C. Cls. R., 278; Great Falls Mfg. Co. v. United States, 112 U. S., 645; Langford v. United States, 101 U. S., 341; Palmer v. United States, 128 U. S., 262; Lynah v. United States, 188 U. S., 445.)
In the case at bar it does not appear from the petition that the Government makes any claim of title to any part of the lands of the claimant, hence if there has been any taking of the same within the meaning of the fifth amendment this court has jurisdiction.
The rule of interpretation as to what shall be considered “ property ” and as to what shall constitute a “ taking ” of the same, under the fifth amendment or similar constitutional provisions, has been somewhat modified in recent years and is doubtless more liberal to the owner now than formerly. Mr. Sedgwick, writing more than forty years ago, in discussing this subject, foreshadowed this change by assuming to differ with the weight of authority at that time, which, tersely stated by him, was “ that to entitle the owner to protection under this clause, the property must be actually taken in the physical sense of the word, and that the proprietor is not entitled to claim remuneration for indirect or consequential damage, no matter how serious or how clearly and unquestionably resulting from the exercise of the power of eminent domain.” He challenges the soundness of this doctrine and maintains that an owner may be deprived of property, though a particular piece may not be actually taken *16 (Sedgwick’s Constitutional Laws, 2d ed., 456-458). The following are some of the authorities on this subject, and seem to support the modification of the rule as noted: Pumpelly v. Green Bay Co., 13 Wall., 166; Manigault v. Springs, 199 U. S., 473, 484; Chappell v. United States, 34 Fed. Rep., 673; Arimond v. Green Bay Co., 31 Wis., 316, 335; Eaton v. Railway Co., 51 N. H., 504; Thompson v. Improvement Co., 54 N. H., 545.
The following forcible language of Mr. Justice Miller in the opinion of the court in Pumpelly v. Green Bay Co., supra, is instructive in this connection:
“ It would be a very curious and unsatisfactory result if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the Government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the Government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of the word, it is not taken for the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the Government, and may give an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors.” {Id., 177-178.)
Much of this seeming conflict of authorities upon this subject has arisen from a confusion as to the definition of property. Property has been well defined to be a person’s right to possess, use, enjoy, and dispose of a thing not inconsistent with the law of the land; and as regards real property this definition involves the negative of the right of the owners of contiguous and neighboring property to interfere with and lessen this use and enjoyment, provided such interference is not a reasonable use of such neighboring property. (1 Lewis Eminent Domain, Sec. 54-58.)
*17 While, as already stated, it is believed that the trend of recent decisions in the construction and application of the constitutional provision referred to and similar ones is as indicated, it appears from the weight of authority, and particularly from the numerous decisions of the Supreme Court upon this subject, that there must be some actual physical invasion of land and visible appropriation of some of its uses to constitute a taking of property for which damages will be awarded. (Transportation Co. v. Chicago, 99 U. S., 635; Gibson v. United States, 166 U. S., 269; Lynah v. United States, 188 U. S., 445; Bedford v. United States, 192 U. S., 217; Manigault v. Springs, 199 U. S., 473; Chappell v. United States, 34 Fed. Rep., 673, S. C., 160 U. S., 499.)
In Transportation Co. v. Chicago, supra, the court, speaking through Mr. Justice Strong, said :
“ But acts done in the proper exercise of govermental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision.” (Id., 624.)
This language is quoted approvingly in Gibson v. United States, supra, at page 275.
Lynah v. United States, supra, was a suit for the recovery of damages for the injury to lands by flowage, and in sustaining a judgment for such recovery the court, speaking through Mr. Justice Brewer, said:
“ It is clear from these authorities that where the Government, by the construction of a dam or other public works, so floods lands belonging to an individual as to substantially destroy their value there is a taking within the scope of the fifth amendment. While the Government does not directly proceed to appropriate the title, yet it takes away the use and value. When that is done, it is of little consequence in whom the fee may be vested.” (Id., 470.) .
In Manigault v. Springs, supra, in rendering the opinion of the court, Mr. Justice Brown, after reviewing many of the authorities in the Supreme Court on this question, said: *18 mands compensation, but otherwise where, as in this case, plaintiff is merely put to some extra expense in warding off the consequences of the overflow.” (Id., 484-485.)
*17 “We think the rule to be gathered from these cases is that where there is a practical destruction or material impairment of the value of plaintiff’s lands there is a taking which de-
*18 Chappell v. United States, supra, is an instructive case upon this subject as indicating what kind of an invasion or appropriation of the uses of lands will be regarded as an actual physical invasion within the authorities quoted. That was a suit to recover damages caused by the erection of two light-houses on the Patapsco River. They were range lights located about 1 mile apart, one in front of the shore of the plaintiff’s land and the other upon the land of another party about 1 mile distant and in such a direction that the zone of light between them extended across the plaintiff’s lands. For the intended use of these light-houses it was requisite that there should be no intervening object obstructing the passage of light between them, and the plaintiff had been forbidden by the officers of the Government from erecting buildings upon his lands which would have that effect. A demurrer by the Government to a petition setting up the foregoing facts was overruled by the court.
Shylock announces the essence of the doctrine under discussion when, after he has been deprived of his property by the judgment of the court, he says:
“ You take my house, when you do take the prop That doth sustain my house; you take my life, When you do take the means whereby I live.”
Giving to the petition in this case the most liberal construction, we think there has been no taking of the property of the claimant or of any of its uses, within any of the authorities upon this subject. A fort has been erected upon lands adjoining the lands of the claimant and guns have been installed therein directed over and across these lands of the claimant; but there is no averment that one of these guns has ever been fired so as to throw a missile in that direction; and no presumption arises that one ever will be so fired in time of peace. The only easement which the Government has asserted over the claimant’s property is the right to fire its guns across it at an invading enemy in time of war. Such an easement, if it may be so called, the Government has over *19 every foot of its territory; and if the necessities of war ever require the exercise of such an easement no recoverable damages will result to the owner. That this is the law is conceded by the claimant.
If the averments of the petition had shown an intention and plan on the part of the Government, in time of peace, to fire the guns of the fort over and across the premises of the claimant for practice or any other purpose, and thereby interfere with her exclusive use of the same; or if it had been alleged that there was any intention and plan on the part of the Government, in time of peace, to continue to fire the guns of the fort in any direction so as to repeat and make permanent the damage by concussion to the claimant’s property and thereby destroy its use, an entirely different question would be presented and one which is not here decided.
It is ordered that the demurrer be sustained with leave to the claimant to amend her petition within sixty days.